Charles M. KOHN, Plaintiff–Appellee,

v.

**BURLINGTON NORTHERN AND SANTA FE RAILROAD,** Defendant–Appellant.

No. 00CA2305.

Colorado Court of Appeals, Div. IV.

March 27, 2003.

Certiorari Denied Oct. 14, 2003.

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2002.

Haddon, Morgan, Mueller, Jordan, Mackey, & Foreman, P.C., Norman R. Mueller, Rachel A. Bellis, Denver, Colorado, for Plaintiff–Appellee.

Hall & Evans, L.L.C., Alan Epstein, Frederick T. Martinez, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge DAILEY.

Defendant, Burlington Northern and Santa Fe Railroad, appeals the judgment entered in favor of plaintiff, Charles M. Kohn, on a claim of negligence brought pursuant to the Federal Employers' Liability Act (FELA), 45 U.S.C. §§ 51–60 (2000). We affirm.

Plaintiff, a switchman for the railroad, was injured when he stepped off a locomotive engine stopped on a bridge and fell twenty feet into a ravine. The bridge had a walkway, but only on the other side of the engine.

Plaintiff sued under FELA, alleging that the railroad was negligent in failing to provide him with a reasonably safe workplace. In support of his claim, plaintiff presented evidence that: (1) he was neither qualified for the switchman's job nor familiar with this territory; (2) the railroad had not acquainted him with the hazards of the job; (3) he had not been informed about the existence of the bridge; (4) the engine was missing a step light; (5) there was no lighting at the bridge; (6) there was no sign warning of a drop-off at the bridge; and (7) there was no walkway on the side of the engine he descended.

The railroad requested that plaintiff be precluded from arguing, and the jury be precluded from considering, the railroad's failure to build a second walkway as evidence of its negligence. In support of its position, the railroad relied upon an order issued in 1977 by the Federal Railroad Administration (FRA) pursuant to § 202 of the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101, et seq. (2000). In this order terminating rulemaking proceedings, the FRA concluded "that the issuance of a Federal rule requiring walkways on railroad bridges, trestles, and similar structures cannot be justified at the present time." 42 Fed.Reg. 22184, 22185 (1977).

The railroad asserted that, because the FRA explicitly rejected a requirement of walkways over railroad bridges, plaintiff was precluded from relying upon the lack of a walkway to establish a claim of negligence under FELA. The trial court disagreed.

The jury found for plaintiff on his FELA claim, and the trial court entered judgment accordingly.

## I. FELA Negligence Claim Based on Lack of Walkway

On appeal, the railroad again contends that the trial court should have precluded plaintiff from claiming, and the jury from considering, the lack of a walkway as a basis for finding negligence. The railroad rests its contention upon two premises: (1) FRSA supersedes

and thus precludes liability under FELA to the same extent that FRSA preempts liability under state law; and (2) as a result of the FRA's order, FRSA preempts state liability based on the lack of walkways over railroad bridges. We are not persuaded.

■ FELA provides the exclusive remedy in tort for a railroad employee injured as a result of his or her employer's negligence. *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 442 (5th Cir.2001). Although no specific standards of care are set forth in FELA, certain duties have become an integral part of the statute, including the duty to provide a reasonably safe workplace. *See Rannals v. Diamond Jo Casino*, 265 F.3d 442, 448 (6th Cir.2001).

FRSA was enacted "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. It authorizes the United States Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety." 49 U.S.C. § 20103(a).

Whether FRSA supersedes FELA is unclear. *Compare Failing v. Burlington N.R.R.*, 815 P.2d 974, 976–77 (Colo.App. 1991)(a finding of railroad negligence under FELA was not barred by evidence of compliance with FRSA statutes and regulations), *and Earwood v. Norfolk S. Ry.*, 845 F.Supp. 880, 887–88 (N.D.Ga.1993)(FRSA does not preclude use of evidence in FELA action merely because it precludes use of such evidence in state action), *with Lane v. R.A. Sims, Jr., Inc., supra*, 241 F.3d at 442 (FELA is superseded by FRSA to the extent FRSA preempts state law; liability may not be imposed under state law or FELA where railroads have complied with FRSA statutes, regulations, or orders addressing specific railroad safety concerns), *and Waymire v. Norfolk & W. Ry.*, 218 F.3d 773, 775–76 (7th Cir.2000)(same).

We need not resolve this issue, however, because even assuming we agreed with the railroad on this point, we disagree with its view of the preemptive effect of the FRA's order.

The preemption doctrine, derived from the Supremacy Clause, United States Const. Art. VI, mandates that state law give way when it conflicts with federal law. *See Banner Adver., Inc. v. City of Boulder*, 868 P.2d 1077, 1080 (Colo.1994).

■ Preemption may be either express or implied:

Absent explicit pre-emptive language, we have recognized at least two types of implied pre-emption: field pre-emption, where the scheme of federal regulation is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it," and conflict pre-emption, where "compliance with both federal and state regulations is a physical impossibility," or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress."

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 98, 112 S.Ct. 2374, 2383, 120 L.Ed.2d 73 (1992) (citations omitted).

■■ Federal preemption is a question of law subject to de novo review by this court. *See, e.g., Choy v. Redland Ins. Co.*, 103 Cal. App.4th 789, 796, 127 Cal.Rptr.2d 94, 99 (2002); *Doty v. Frontier Communications, Inc.*, 272 Kan. 880, 888, 36 P.3d 250, 257 (2001). The decisions of lower federal courts may be persuasive, but they are not binding upon us. *See Cmty. Hosp. v. Fail*, 969 P.2d 667, 672 (Colo.1998)("neither federal supremacy nor any other [principle] of federal law requires that a state court's interpretation of federal law give way to a federal court's interpretation other than that of the United States Supreme Court"); *see also Carlisle v. Philip Morris, Inc.*, 805 S.W.2d 498, 505 (Tex.App.1991)(preemption context).

Here, in support of its preemption argument, the railroad relies upon 49 U.S.C. § 20106 of the FRSA, which provides, in pertinent part:

Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to

railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—

(1) is necessary to eliminate or reduce an essentially local safety or security hazard;

(2) is not incompatible with a law, regulation, or order of the United States Government; and

(3) does not unreasonably burden interstate commerce.

49 U.S.C. § 20106 (as amended by Pub.L. No. 107–296, § 1710(c), 116 Stat. 2319 (Nov. 25, 2002)).

■ In *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 1737, 123 L.Ed.2d 387 (1993), the United States Supreme Court held that "[l]egal duties imposed on railroads by the common law fall within the scope" of state "law[s], rule[s], regulation[s], order[s], or standard[s]" which may be subject to preemption under 49 U.S.C. § 20106. The issue, the Court said, was whether federal regulations covered the same subject matter as the allegations brought against the railroad under state law. Whether something is "cover[ed]" within the meaning of § 20106, however, should be determined with "considerable solicitude for state law." *CSX Transp., Inc. v. Easterwood, supra*, 507 U.S. at 665, 113 S.Ct. at 1738.

The railroad argues that, because the FRA order dealt with the subject of walkways over bridges, it "covered" that subject and, thus, preempted state law liability in connection therewith. We disagree.

■ In this regard, the railroad relies on a type of implied conflict preemption known as negative preemption. Under this type of preemption, "where failure of … federal officers affirmatively to exercise their full authority takes on the character of a ruling that no such regulation is appropriate or approved pursuant to the policy of the statute, States are not permitted to use their police power to enact such a regulation." *Ray v. Atl. Richfield Co.*, 435 U.S. 151, 178, 98 S.Ct. 988, 1004–05, 55 L.Ed.2d 179 (1978)(internal quotation marks omitted). We are not persuaded.

■ For negative preemption, "what is needed is proof in some form that the agency concluded 'that no such [state] regulation is appropriate.' " *Pearson v. Columbus & Greenville Ry.*, 737 So.2d 390, 401 (Miss.Ct.App.1998)(quoting *Ray v. Atl. Richfield Co., supra* ); *see also Burlington N.R.R. v. Minnesota*, 882 F.2d 1349, 1353 (8th Cir.1989)(negative preemption occurs when federal agency's inaction carries with it determination that no state regulation is appropriate).

In *Norfolk & Western Railway v. Public Utilities Commission*, 926 F.2d 567 (6th Cir. 1991), the court applied the negative preemption doctrine in considering the impact of the same FRA order at issue here, as well as a 1978 FRA policy statement that "FRA has affirmatively determined that issuance of Federal regulations governing walkways on bridges is not warranted based on the projected cost of installation and the collateral safety problems which would be created." *See* 43 Fed.Reg. 10586 (1978). Concluding that "[t]he FRA has purposefully declined to implement a national regulation requiring railroad walkways on bridges," the *Norfolk* court held that state regulation of walkways over bridges was preempted because, under *Ray v. Atlantic Richfield Co., supra*, the FRA had affirmatively determined that "no regulation is appropriate." *Norfolk & W. Ry. v. Pub. Utils. Comm'n, supra*, 926 F.2d at 570, 572.

We agree with the *Norfolk* court's determination that the FRA purposefully declined to implement a national regulation. However, we disagree with its conclusion that state regulation or liability is barred because the FRA determined that "no regulation is appropriate." We interpret the 1977 order differently.

In the 1977 order, the FRA noted a concern that "[t]he issuance of a Federal standard for walkways might be counterproductive since it would generally preempt the States from carrying out their responsibilities under existing State laws except where an essentially local safety hazard could be identified." The FRA concluded, in pertinent part:

> [T]he issuance of a Federal rule requiring walkways on railroad bridges, trestles, and similar structures cannot be justified at the present time. First, any such rule would impose significant added burdens in terms of the large dollar cost to the railroad industry for construction of the walkways, the added hazard to persons and property and additional liability exposure for the railroads because of increased trespassing, and the possible decrease in overall railroad safety because of the diversion of resources from other maintenance and improvement projects. Secondly, neither the commenters nor the FRA has been able to demonstrate that such a rule would result in a definite or measurable improvement to railroad employee safety. *Finally, if an employee safety problem does exist because of the lack of walkways in a particular area or on a particular structure, regulation by a State agency that is in a better position to assess the local need is the more appropriate response.*

42 Fed.Reg. 22185 (May 2, 1977)(emphasis added).

The 1977 order does not deny the existence of a safety issue. And the emphasized portion of the FRA's order explicitly recognized the propriety of state regulation in the area. *See Missouri Pac. R.R. v. R.R. Comm'n,* 833 F.2d 570, 576 (5th Cir. 1987)(1977 order and 1978 policy statement "in no way suggest that the FRA has decided as a matter of policy that walkway regulations must be national in character and must preempt state action"); *S. Pac. Transp. Co. v. Publ. Utils. Comm'n,* 647 F.Supp. 1220, 1226 (N.D.Cal.1986)("When the FRA decided not to adopt a regulation requiring walkways on trestles and bridges, its reasons related specifically to conditions affecting those structures.... [The 1978 policy statement]

did not purport to limit state jurisdiction.... [T]he FRA thus did not claim to have adopted regulations covering that subject."), *aff'd,* 820 F.2d 1111 (9th Cir.1987); *cf. Sprietsma v. Mercury Marine,* 537 U.S. 51, 52, 123 S.Ct. 518, 528, 154 L.Ed.2d 466 (2002)(rejecting state court's determination that liability under state law was preempted under the Federal Boat Safety Act (FBSA) as a result of the Coast Guard's decision not to require propeller guards for boats, in part because "the Illinois Supreme Court's conclusion does not accurately reflect the Coast Guard's entire explanation for its decision").

■ In our view, the FRA's explanation is not inconsistent with a tort verdict premised on a jury's finding that a walkway should have been installed on this particular bridge. And the FRSA's generic concern for uniformity does "not justify the displacement of state common-law remedies that compensate accident victims and their families and that serve the Act's more prominent objective, emphasized by its title, of promoting [railroad] safety." *See Sprietsma v. Mercury Marine, supra,* 53 U.S. at 70, 123 S.Ct. at 530 (analyzing FBSA preemption).

Accordingly, we conclude that the FRA's order does not preempt state law negligence claims based on the lack of walkways over railroad bridges. Consequently, the trial court did not err in denying the railroad's motion to preclude evidence or argument about the lack of a walkway in aid of the plaintiff's negligence claim under FELA.

### II. Admission of Accident Analysis Report

■ The railroad also contends that the trial court erred in admitting evidence pertaining to a railroad accident analysis report in which a railroad supervisor attributed the accident to several causes, including the lack of a walkway. According to the railroad, reversal is required because the FRA's order precluded the use of the report and related testimony to establish a missing walkway as a basis for a finding of negligence. However, we reject this assertion for the reasons previously stated in Part I of this opinion.

We also reject the railroad's contention that the report and related testimony included inadmissible hearsay because it referenced not only the supervisor's out-of-court statements, but also the out-of-court statements of other railroad employees. *See Schmutz v. Bolles,* 800 P.2d 1307, 1312 (Colo. 1990)(CRE 803(6) business records exception encompasses documents "prepared by, or from information transmitted by, a person 'with knowledge' of the matters recorded").

Accordingly, the judgment is affirmed.

Judge ROTHENBERG and Judge KAPELKE concur.