The summaries of the Colorado Court of Appeals published opinions constitute no part of the opinion of the division but have been prepared by the division for the convenience of the reader.  The summaries may not be cited or relied upon as they are not the official language of the division.  Any discrepancy between the language in the summary and in the opinion should be resolved in favor of the language in the opinion.

SUMMARY
August 23, 2018

## 2018COA125

## No. 17CA0663 Forfar v. Walmart — Insurance; Damages — Collateral Source Rule — Reduction of Damages for Payment From Collateral — Contract Exception

In this case, a division of the court of appeals concludes that the trial court correctly applied both the pre-verdict collateral source rule in section 10-1-135(10)(a), C.R.S. 2017, and the contract exception in section 13-21-1111.6, C.R.S. 2017, to Medicare benefits.  The division also concludes that Medicare does not preempt application of the state law collateral source doctrine.

COLORADO COURT OF APPEALS                                    **2018COA125**

Court of Appeals No. 17CA0663
City and County of Denver District Court No. 15CV31638
Honorable John W. Madden IV, Judge

Robert P. Forfar III,

Plaintiff-Appellee,

v.

Wal-Mart Stores, Inc., d/b/a Wal-Mart, d/b/a Wal-Mart Supercenter, d/b/a
Wal-Mart Supercenter #, d/b/a Wal-Mart Market, d/b/a Wal-Mart
Neighborhood Market; Wal-Mart Stores East, LP, d/b/a Wal-Mart Stores East I,
LP; Wal-Mart Associates, Inc.; Wal-Mart Store #984; and Castle Rock Wal-Mart
Supercenter,

Defendants-Appellants.

JUDGMENT AFFIRMED

Division III
Opinion by JUDGE WEBB
Fox and Márquez*, JJ., concur

Announced August 23, 2018

Burg Simpson Eldredge Hersh & Jardine, P.C., Nelson Boyle, Englewood,
Colorado, for Plaintiff-Appellee

Kutak Rock LLP, Mark C. Willis, Mia K. Della Cava, Denver, Colorado, for
Defendants-Appellants

Heideman Poor LLC, John F. Poor, Denver, Colorado, for Amicus Curiae
Colorado Trial Lawyers Association

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2017.

¶ 1    This premises liability case presents a novel question in Colorado: whether the collateral source rule — codified in section 10-1-135(10)(a), C.R.S. 2017, and section 13-21-111.6, C.R.S. 2017 — applies to Medicare benefits. We conclude that it does.

¶ 2    Wal-Mart Stores, Inc., appeals the judgment entered on a jury verdict in favor of Robert P. Forfar III, for injuries he sustained when he slipped and fell at a Wal-Mart store. The judgment included $44,000 in economic damages for the reasonable value of medical services that Mr. Forfar, a Medicare beneficiary, had received.

¶ 3    Before trial, Wal-Mart moved to exclude evidence of Mr. Forfar's medical expenses owed under agreements that he had entered into with his medical services providers. Wal-Mart argued that because these agreements were null and void under Medicare regulations, evidence of the reasonable value of those medical services should be "limited to the Medicare approved charges for the services."[1] Mr. Forfar also moved in limine to exclude any evidence

---

[1] Walmart asserts in its opening brief that $9170.83 could have been properly charged under the Medicare limits for Mr. Forfar's medical services. This amount was based on an expert disclosure that the trial court found untimely.

1

that he had received Medicare benefits, arguing that such benefits constituted a collateral source.

¶ 4    The trial court ruled that Wal-Mart could "not present evidence to the jury as to the amount of the Medicare limits."  The court also ruled that Mr. Forfar "may not present evidence of private contracts between himself and any of the Third-Party Medical Providers."  Still, it allowed him to "present evidence of the reasonable value of the medical services . . . and such value need not be based upon the Medicare limits."  The trial proceeded according to this ruling, with Mr. Forfar seeking damages of $72,636 as the reasonable value of the medical services.

¶ 5    After trial, Wal-Mart moved to reduce the damages under section 13-21-111.6.  It argued that the economic damages awarded for Mr. Forfar's medical expenses "should be reduced to Medicare accepted rates."  The trial court denied the motion, holding that Medicare benefits fall within the contract exception to the collateral source rule of section 13-21-111.6.

¶ 6    Wal-Mart challenges both of these rulings on appeal.  We affirm.

## I. Background

¶ 7    In Colorado, the collateral source rule has both a pre-verdict evidentiary component and a post-verdict component.  The evidentiary component is codified at section 10-1-135(10)(a).  *See Smith v. Jeppsen*, 2012 CO 32, ¶ 19 (stating that section 10-1-135(10)(a) "unambiguously codifies" the common law collateral source rule).  The post-verdict component is codified at section 13-21-111.6.  Because this case involves both components, they require separate discussion.

¶ 8    Generally, under the collateral source rule, "compensation or indemnity received by an injured party from a collateral source, wholly independent of the wrongdoer and to which the wrongdoer has not contributed, will not diminish the damages otherwise recoverable [by the injured party] from the wrongdoer."  *Colo. Permanente Med. Grp., P.C. v. Evans*, 926 P.2d 1218, 1230 (Colo. 1996) (quoting *Kistler v. Halsey*, 173 Colo. 540, 545, 481 P.2d 722, 724 (1971)).

¶ 9    Pre-verdict, this doctrine applies "to bar evidence of collateral source benefits because such evidence could lead the fact-finder to improperly reduce the plaintiff's damages award on the grounds

that the plaintiff already recovered his loss from the collateral source." *Wal-Mart Stores, Inc. v. Crossgrove*, 2012 CO 31, ¶ 12. Section 10-1-135(10)(a) provides, "[t]he fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor."

¶ 10    Still, our supreme court has recognized some tension between "the pre-verdict evidentiary component of the collateral source rule that controls this case and the reasonable value rule." *Crossgrove*, ¶ 19. Specifically, "the correct measure of damages is the necessary and reasonable value of the [medical] services rendered." *Kendall v. Hargrave*, 142 Colo. 120, 123, 349 P.2d 993, 994 (1960). And to prove that value, the amount paid for medical services is "some evidence of their reasonable value." *Id.*

¶ 11    But what happens if evidence of the amount paid would disclose a collateral source, thus risking that the jury could improperly reduce the damages award for that reason?

¶ 12    In *Crossgrove*, ¶ 20, the supreme court resolved this tension by holding that "the pre-verdict evidentiary component of the collateral source rule prevails in collateral source cases to bar the admission of the amounts paid for medical services." It explained:

> Admitting amounts paid evidence for any purpose, including the purpose of determining reasonable value, in a collateral source case carries with it an unjustifiable risk that the jury will infer the existence of a collateral source — most commonly an insurer — from the evidence, and thereby improperly diminish the plaintiff's damages award.

*Id.* Particularly relevant here, the court offered an example: "[T]he government sets the rates that providers who honor public insurance programs, like Medicare and Medicaid, must accept for certain services," which "are often significantly lower than those billed by the provider." *Id.* at ¶ 22.

¶ 13     As to the post-verdict component, start with the rule: section 13-21-111.6 "requires the trial court to reduce a successful plaintiff's verdict as a matter of law by the amount the plaintiff 'has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company or fund in relation to the injury . . . sustained.'" *Id.* at ¶ 14 (quoting § 13-21-111.6). Then consider the exception: the statute preserves the common law post-verdict component of the collateral source doctrine "to a limited extent by prohibiting trial courts from reducing a plaintiff's verdict by the amount of indemnification or

5

compensation that the plaintiff has received, or will receive in the future, from 'a benefit paid as a result of a contract entered into and paid for by or on behalf of' the plaintiff.'" *Id.* at ¶ 15 (quoting § 13-21-111.6).

¶ 14 So, given all this, what more need be said? A lot, according to Wal-Mart, because the case involves Medicare — a context in which the collateral source rule has yet to be addressed by any Colorado court. After walking us through a labyrinth of federal statutes and regulations, Wal-Mart asserts the following:

- because Mr. Forfar's providers, who are covered by Part B of the Medicare program, failed to submit an affidavit opting out of Medicare, they cannot recover more than Medicare allows for their services, *see* 42 U.S.C. § 1395b-3 (2012); 42 U.S.C. § 1395u(b)(18)(B) (2012); 42 C.F.R. § 405.420 (2017);

- to the extent that the providers' private contracts with him provided otherwise, because those contracts did not comply with the disclosure requirements of Medicare, they are — as the trial court found — null and void, *see* 42 U.S.C. § 1395a(b)(2)(B)(i)-(v) (2012); 42 C.F.R. § 405.405(c) (2017); 42 C.F.R. § 405.415 (2017); 42 C.F.R. § 405.430(b)(1) (2017);

- "no person" can be liable above the Medicare limits for medical services provided to a Medicare beneficiary, *see* 42 U.S.C. § 1395u(b)(18)(B) ("No person is liable for payment of any amounts billed for such a service in violation of the previous sentence."); 42 U.S.C. § 1395w-4(g)(1)(A)(ii) (2012) ("No person is liable for payment of any amounts billed for the service in excess of such limiting charge."); and

- insofar as the collateral source rule or section 13-21-111.6 may provide for greater liability, they are preempted by Medicare.

¶ 15    For his part, Mr. Forfar agrees that he was covered by Medicare based on his Social Security Disability Insurance (SSDI) benefits. Even so, after taking his own exhaustive tour of both federal statutes and regulations, he responds that under *Barnett v. American Family Mutual Insurance Co.*, 843 P.2d 1302 (Colo. 1993), Medicare is a collateral source, which triggers the evidentiary limitation in section 10-1-135(10)(a) and is subject to the contract exception of section 13-21-111.6.

¶ 16    But must we take an equally deep dive into federal statutes and regulations to decide the narrow question whether the trial

court properly applied the collateral source rule, both pre-verdict and post-verdict? No.

¶ 17     Instead, we assume, without deciding, that Mr. Forfar's providers are subject to the Medicare limits.[2] Next, we conclude that under *Crossgrove*, the trial court correctly applied both the pre-verdict collateral source rule in section 10-1-135(10)(a) and the contract exception in section 13-21-111.6. Finally, we conclude that Medicare does not preempt application of the state law collateral source doctrine.

## II.  Application of the Collateral Source Rule

### A.  Standard of Review

¶ 18     The parties agree that we review a trial court's evidentiary rulings for an abuse of discretion. *Crossgrove*, ¶ 7. A trial court abuses its discretion when its ruling derives from an erroneous application of the law or when its ruling is manifestly arbitrary, unreasonable, or unfair. *Smith v. Kinningham*, 2013 COA 103, ¶ 9.

---

[2] Because we assume, without deciding, that the private contracts are null and void — and thus Mr. Forfar's providers are subject to the Medicare limits — we need not address Walmart's argument that cases preceding the enactment of these regulations are no longer good law.

¶ 19   The parties also agree that whether a trial court has applied the correct legal standard presents a question of law subject to de novo review. *Crossgrove*, ¶ 7. So does interpretation of a statute. *Id.*

### B. Pre-Verdict Application of the Collateral Source Rule to Medicare Benefits

¶ 20   Should benefits payable up to Medicare limits have been admitted to show the reasonable value of Mr. Forfar's medical services or do those benefits constitute a collateral source, subject to the evidentiary bar of section 10-1-135(10)(a)? We conclude that the evidentiary bar applies.

¶ 21   To begin, in *Smith* the supreme court held that section 10-1-135(10)(a) "clearly and unambiguously states that 'the fact or amount of any collateral source payment or benefits *shall not be admitted as evidence* in any action against an alleged third-party tortfeasor.'" ¶ 21 (quoting § 10-1-135(10)(a)). The court explained that a "collateral source is a person or company, wholly independent of an alleged tortfeasor, that compensates an injured party for that person's injuries." *Id.*

9

¶ 22    A benefit is not excluded from the definition of a collateral

source merely because it comes from a government program.  To

the contrary, Colorado courts have held that benefits from Social

Security, Medicaid, and public retirement plans all meet the

definition of a collateral source.  *See Pressey v. Children's Hosp.*

*Colo.*, 2017 COA 28, ¶ 13 ("Private insurance, private disability

benefits, [SSDI], and retirement benefits all fall within the contract

exception to the collateral source statute."); *Kinningham*, ¶ 15

("[T]he alleged Medicaid benefits were paid on [the plaintiff's] behalf,

and fall squarely within the definition of a collateral source.").

¶ 23    This is so because under the collateral source rule,

> making the injured plaintiff whole is solely the
> tortfeasor's responsibility.  Any third-party
> benefits or gifts obtained by the injured
> plaintiff accrue solely to the plaintiff's benefit
> and are not deducted from the amount of the
> tortfeasor's liability.  These third-party sources
> are "collateral" and are irrelevant in fixing the
> amount of the tortfeasor's liability.

*Volunteers of Am. Colo. Branch v. Gardenswartz*, 242 P.3d 1080,

1082-83 (Colo. 2010).

¶ 24    Undaunted, Wal-Mart argues that "amounts paid by Medicare

are dispositive of the necessary and reasonable value of medical

services provided" because Mr. Forfar never incurred liability for any greater amounts. And allowing him to recover more than the Medicare limits, Wal-Mart continues, results in a windfall for him. One does not usually think of applying the collateral source rule to Medicare as creating a windfall, where the recipient has given value by paying social security taxes during his or her work life. But to the extent that a windfall occurs, we conclude that the plaintiff — not the tortfeasor — should be the beneficiary.

¶ 25 Recall, our supreme court has acknowledged that "healthcare providers accept significantly less than the amount billed for certain services in satisfaction of government insured patients' bills." *Crossgrove*, ¶ 22. Even so, by any reckoning, "the pre-verdict evidentiary component of the collateral source rule prevails over the older 'reasonable value rule,' which allowed trial courts to admit evidence of the amount actually paid for healthcare services." *Kinningham*, ¶ 18.

¶ 26 This application of the collateral source rule "prohibits the wrong-doer from enjoying the benefits procured by the injured plaintiff." *Gardenswartz*, 242 P.3d at 1083. The supreme court justified applying the prohibition because

> [i]f either party is to receive a windfall, the rule awards it to the injured plaintiff who was wise enough or fortunate enough to secure compensation from an independent source, and not to the tortfeasor, who has done nothing to provide the compensation and seeks only to take advantage of third-party benefits obtained by the plaintiff.

*Id.*; *see also Crossgrove v. Wal-Mart Stores, Inc.*, 280 P.3d 29, 33 (Colo. App. 2010) (rejecting the defendant's argument that the "collateral source rule does not apply to written-off expenses because the rule 'excludes only "evidence of benefits *paid* by a collateral source"'" (quoting *Robinson v. Bates*, 857 N.E.2d 1195, 1200 (Ohio 2006))), *aff'd*, 2012 CO 31.

¶ 27    Still persisting, Wal-Mart cites some out-of-state authority holding that Medicare benefits do not constitute a collateral source and "the amount paid by Medicare [is] dispositive of the reasonable value of healthcare provider services." *Stayton v. Del. Health Corp.*, 117 A.3d 521, 533 (Del. 2015).  But these cases do not treat the collateral source rule as broadly as section 10-1-135(10)(a) does; the statute bars evidence of "the fact or amount of *any* collateral source payment or benefits."  (Emphasis added.)  *See Sinclair*

12

*Transp. Co. v. Sandberg*, 2014 COA 76M, ¶ 38 ("[T]he term 'any' means 'without limit or restriction.'") (citation omitted).

¶ 28     Unsurprisingly, "[a] majority of courts have concluded that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions." *Felts v. Bd. of Cty. Comm'rs*, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *4 (D.N.M. July 31, 2017) (quoting *Pipkins v. TA Operating Corp.*, 466 F. Supp. 2d 1255, 1259 (D.N.M. 2006)); *see Bynum v. Magno*, 101 P.3d 1149, 1162 (Haw. 2004) (Limiting the reasonable value of medical services "to the pecuniary loss suffered by a plaintiff would mean, for example, that injured plaintiffs who received gratuitous medical services, were treated at a veteran's hospital, or were covered by medical insurance plans such as offered to Kaiser Hospital patients would *not* be entitled to recover any monetary amount from the tortfeasor (except perhaps nominal out-of-pocket fees) . . . . [S]uch an approach [is] contrary to the 'great weight of authority in this country.'" (quoting *Pryor v. Webber*, 263 N.E.2d 235, 240 (Ohio 1970))).

¶ 29   The majority rule better aligns with our supreme court's view in *Crossgrove* that "[d]ue to the nature of modern healthcare billing practices, a reasonable juror could easily infer the existence of a collateral source if presented with evidence, for example, that the provider accepted $40,000 in satisfaction of a $250,000 medical bill." *Crossgrove*, ¶ 21.

¶ 30   For these reasons, we conclude that the trial court properly held Medicare benefits to be a collateral source inadmissible as evidence based on section 10-1-135(10)(a). In other words, the reasonable value of Mr. Forfar's medical services was not limited to amounts that Medicare paid to his providers, even assuming that they could receive no more from Mr. Forfar or anyone who might be vicariously liable to them, such as a guarantor. But that conclusion brings us to the contract exception.

### C.  Post-Verdict Application of the Contract Exception in Section 13-21-111.6

¶ 31   Should the trial court have reduced Mr. Forfar's damages for Medicare benefits or do those benefits fall within the contract exception of section 13-21-111.6? We further conclude that they fall within the contract exception.

14

¶ 32    Recall, the General Assembly modified the common law collateral source rule by enacting section 13-21-111.6. The first clause directs a trial court to reduce a plaintiff's award for any benefits the plaintiff received from collateral sources. But the second clause says "the verdict shall not be reduced by the amount by which [the injured plaintiff] has been or will be wholly or partially indemnified *or compensated by a benefit paid as a result of a contract entered into and paid for by or on behalf of such person.*" § 13-21-111.6 (emphasis added).

¶ 33    Although no Colorado court has addressed Medicare benefits under section 13-21-111.6, the reasoning of cases sweeping other benefits under this section is informative as to Medicare benefits.

¶ 34    The division in *Pressey*, ¶ 14, explained that "Medicaid benefits are paid on behalf of [the plaintiff], and she was required to enter into a written Medicaid application agreement to repay the state for any Medicaid benefits she receives for which she would not qualify under the federal guidelines." Thus, "[u]nder section 13-21-111.6, these benefits are dependent upon 'a contract entered into . . . by or on behalf of' [the plaintiff] for which she remains financially responsible." *Id.* (quoting § 13-21-111.6).

15

¶ 35 In *Barnett*, 843 P.2d at 1310, the supreme court held that SSDI "benefits fall within the exception to section 13-21-111.6" because they "are the result of payments made under a contributory insurance system, rather than gratuities or public assistance."

¶ 36 In *Van Waters & Rogers, Inc. v. Keelan*, 840 P.2d 1070, 1079 (Colo. 1992), the supreme court held that disability benefits payable to a firefighter under a public pension plan fell within the contract exception to the collateral source statute:

> Because an employee exchanges something of value, his services, in return for an employment contract and its derivative benefits, benefit payments received as part of the compensation for these services are entitled to the same protection against offset that would apply to benefits received as a result of an insurance contract for which that person had paid money.

*Id.*

¶ 37 Consistent with these Colorado cases, in *Baumann v. American Family Mutual Insurance Co.*, Civ. A. No. 11-cv-00789-CMA-BNB, 2012 WL 122850, at *7 (D. Colo. Jan. 17, 2012), the federal district court addressed Medicare benefits under section 13-21-111.6. It found "no meaningful difference between Medicare and SSDI

16

benefits given that they are funded by the same employment taxation scheme." *Id.*

¶ 38    And in *Berg v. United States*, 806 F.2d 978, 985 (10th Cir. 1986), the court reasoned:

> Further support for the conclusion that Medicare benefits are a collateral source is provided by the decisions of the other courts that have considered the issue. They have each concluded that when a plaintiff has paid Social Security taxes while employed, any Medicare benefits that are subsequently received are a collateral source.

¶ 39    Similarly, in applying the contract exception to the Medicare benefits received by Mr. Forfar, the trial court explained that Mr. Forfar was eligible for Medicare based on his SSDI benefits (not based on his age). Then the court noted that Mr. Forfar had "qualified for SSDI benefits . . . after he had accumulated a sufficient work history, and . . . [as a] result of his contributions to Social Security." It found that "Medicare benefits available as a result of [Mr. Forfar's] eligibility for SSDI benefits also fall under the contract exception of [section] 13-21-111.6."

¶ 40    Like the court in *Baumann,* we perceive no meaningful difference between SSDI benefits and Medicare benefits. Thus,

17

because the supreme court has concluded that SSDI benefits "fall within the exception to section 13-21-111.6," *Barnett*, 843 P.2d at 1310, we conclude that Mr. Forfar's Medicare benefits — which were available to him based on his SSDI benefits — also fall within this exception.

¶ 41    Even so, Wal-Mart argues that the contract exception should not apply to any charges that exceeded the Medicare limits because Mr. Forfar is not liable for these charges.  In other words, no benefit is involved.  And Wal-Mart points out "at least one court has recognized that the value of Medicare-approved rates inures primarily to the benefit of the program and taxpayers, not plaintiffs."  *See Stayton*, 117 A.3d at 534.

¶ 42    Yet, a similar argument was rejected by the supreme court in *Gardenswartz*, 242 P.3d at 1086-87.  There, the plaintiff's "healthcare providers billed $74,242 for their services in treating his injuries," but because the plaintiff's insurance company "satisfied his medical debts with a payment of $43,236," the plaintiff "could not be billed the difference."  *Id.* at 1085.  Based on this discount, the defendant argued "that the pricing differential between the

18

amounts billed and the amounts paid is illusory because the charges are never actually paid by anyone." *Id.* at 1086.

¶ 43　　The supreme court disagreed. It held that "by discharging [the plaintiff's] obligations to his medical providers, the insurer's remittances *do* constitute a 'benefit' that was 'paid.'" *Id.* (emphasis added). This is so because "[i]f [the plaintiff] had not had insurance coverage, he would have been liable for the entire amount billed or he may not have been treated at all." *Id.* By the same token, had Mr. Forfar not been Medicare eligible, he would have been liable above the Medicare limits.

¶ 44　　In the end, we conclude that the trial court properly applied the contract exception in section 13-21-111.6 to Medicare benefits.

### III. Medicare Statutes Do Not Preempt Colorado's Collateral Source Rule

¶ 45　　Despite all of this, Wal-Mart contends the trial court violated the Supremacy Clause by "failing to apply the express provisions of Medicare statutes and regulations over the collateral source rule." Specifically, Wal-Mart asserts that under the Medicare statutes, "'No Person' — which would include a defendant or alleged tortfeasor such as Wal-Mart — may be held liable for 'payment of

any amounts billed' in excess of Medicare approved charges." This contention does not survive scrutiny.

## A. Preservation and Standard of Review

¶ 46 Wal-Mart does not point to where it raised preemption before the trial court. Still, Mr. Forfar does not challenge preservation. Regardless, we need not comb through the record to determine if preemption was raised, because we can exercise our discretion to review a preemption claim, especially where — like here — no further record development is required. *See Fuentes-Espinoza v. People*, 2017 CO 98, ¶ 19.

¶ 47 Federal preemption is a question of law subject to de novo review. *Kohn v. Burlington N. & Santa Fe R.R.*, 77 P.3d 809, 811 (Colo. App. 2003).

## B. Law

¶ 48 The preemption doctrine, derived from the Supremacy Clause, U.S. Const. art. VI, mandates that state law give way when it conflicts with federal law. *Id.*

¶ 49 Congressional intent to preempt state law may be explicitly stated in the federal statute. *Banner Advert., Inc. v. City of Boulder*, 868 P.2d 1077, 1080 (Colo. 1994). Even absent such explicit

20

language, however, preemption occurs when state law conflicts with federal law. *Id.* This type of preemption — conflict preemption — "is implicated when it is impossible for a private party to simultaneously comply with both state and federal laws, or where the state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Id.* (footnote omitted) (quoting *Hines v. Davidowitz,* 312 U.S. 52, 67 (1941)).

¶ 50    Wal-Mart argues only conflict preemption.

### C.  Analysis

¶ 51    Analysis of federal preemption begins with "the basic assumption that Congress did not intend to displace state law." *Middleton v. Hartman,* 45 P.3d 721, 731 (Colo. 2002) (quoting *Maryland v. Louisiana,* 451 U.S. 725, 746 (1981)).  In other words, "while Congress has the power to preempt state law, it is anticipated that state and federal law will peaceably coexist." *Id.* (citation omitted).

¶ 52    Wal-Mart relies on two Medicare statutes to overcome this presumption:

21

- 42 U.S.C. § 1395u(b)(18)(B), which says that "[a] practitioner described in subparagraph (C) or other person may not bill (or collect any amount from) the individual or another person for any service described in subparagraph (A), except for deductible and coinsurance amounts applicable under this part. No person is liable for payment of any amounts billed for such a service in violation of the previous sentence"; and

- 42 U.S.C. § 1395w-4(g)(1)(A)(ii), which says that "[n]o person is liable for payment of any amounts billed for the service in excess of such limiting charge."

¶ 53    Although neither of these statutes expressly preempts Colorado law, Wal-Mart argues that the trial court's application of the collateral source rule effectively held Wal-Mart liable for "amounts billed" by Mr. Forfar's providers in excess of Medicare limits, which conflicts with the "no person is liable" language of these statutes. Wal-Mart does not assert statutory ambiguity, relying instead on the plain language.

¶ 54    Wal-Mart cites no authority applying conflict preemption to either statute, nor have we found such authority. And in any event,

the plain language of these statutes does not support Wal-Mart's interpretation.

¶ 55    Looking first at 42 U.S.C. § 1395u(b)(18)(B), Wal-Mart does not cite authority, nor have we found any, applying the "no person liable" language to tortfeasors.  But even if this language could be applied to Wal-Mart, it would limit liability only for amounts billed by practitioners: a "practitioner described in subparagraph (C) . . . may not bill . . . for any service described in subparagraph (A), except for deductible and coinsurance amounts applicable under this part."  42 U.S.C. § 1395u(b)(18)(B); *see Clemons v. Quest Diagnostics, Inc.*, No. 99 C 6122, 2000 WL 950291, at *3 (N.D. Ill. June 6, 2000) ("Subparagraph (B) limits the paragraph's applicability to the services described in subparagraph (A), which by its terms applies only to services furnished by a practitioner described in subparagraph (C).").

¶ 56    Wal-Mart has not been billed for any of Mr. Forfar's medical services by his providers, Medicare, or anyone else.  Rather, and consistent with the collateral source rule, the jury awarded Mr. Forfar the reasonable value of their services.  And it did so without having seen any of the providers' bills.

23

¶ 57 Turning to 42 U.S.C. § 1395w-4(g)(1)(A)(ii), this section prohibits a nonparticipating physician or nonparticipating supplier or other person (as defined in § 1395u(i)(2)) from billing a beneficiary for an amount that exceeds a statutorily defined "limiting charge." *See White v. Jubitz Corp.*, 219 P.3d 566, 575 (Or. 2009). Again, Wal-Mart cites no authority, nor have we found any, applying this prohibition to a tortfeasor. Given that the subject line of this subsection is "[l]imitation on *beneficiary* liability," 42 U.S.C. § 1395w-4(g) (emphasis added), this lack of authority is unsurprising. *See Larson v. Sinclair Transp. Co.*, 2012 CO 36, ¶ 8 ("We may also consider the title of the statute and any accompanying statement of legislative purpose.").

¶ 58 But even if the "no person is liable" language in 42 U.S.C. § 1395w-4(g)(1)(A)(ii) could apply to a tortfeasor such as Wal-Mart, this section only precludes liability "for payment of any amounts billed." Again, no amounts have been billed to Wal-Mart.

¶ 59 In sum, we conclude that the Medicare statutes relied on by Wal-Mart do not preempt Colorado law holding it liable for the reasonable value of Mr. Forfar's medical services.

24

## IV.  Attorney Fees

¶ 60    Mr. Forfar requests appellate attorney fees under section 13-17-102(2), C.R.S. 2017, because Wal-Mart's appeal lacked substantial justification.  But the issues presented by Wal-Mart were novel, supported by some out-of-state authority, and thus "not wholly devoid of legal merit or justification."  *Tidwell v. Bevan Props., Ltd.*, 262 P.3d 964, 969 (Colo. App. 2011).  For these reasons, we exercise our discretion and decline to award attorney fees.

## V.  Conclusion

¶ 61    The judgment is affirmed.

JUDGE FOX and JUDGE MÁRQUEZ concur.