484 P.3d 695
DELTA AIR LINES, INC., Petitioner,
v.William SCHOLLE, Respondent.
Supreme Court Case No. 19SC546 Supreme Court of Colorado.
April 12, 2021
Rehearing Denied May 3, 2021
Attorneys for Petitioner: Treece Alfrey Musat P.C., Michael L. Hutchinson, Carol L. Thomson Kathleen, J. Johnson , Denver, Colorado
Attorneys for Respondent: Bendinelli Law Firm, P.C., Marco F. Bendinelli, Jessica L. Schlatter, S. Paige Singleton, Westminster, Colorado
Attorneys for Amicus Curiae Coloradans Protecting Patient Access: Messner Reeves LLP, Kendra N. Beckwith, Darren D. Alberti, Denver, Colorado
Attorneys for Amici Curiae Colorado Defense Lawyers Association, the Colorado Civil Justice League, and the American Tort Reform Association: Messner Reeves LLP, Heather A. Salg, Denver, Colorado, Homiak Law LLC, Kevin D. Homiak, Denver, Colorado
Attorneys for Amicus Curiae The Colorado Trial Lawyers Association: Burg Simpson Eldredge Hersh & Jardine, P.C., Nelson P. Boyle, Jessica L. Derakhshanian, Englewood, Colorado, Ogborn Mihm LLP, Thomas Neville, Denver, Colorado
En Banc
JUSTICE HART delivered the Opinion of the Court. ¶1 In this case and a companion case also announced today, Gill v. Waltz , 2021 CO 21, ––– P.3d ––––, we consider the consequences for an injured employee's claims against a third-party tortfeasor when the employee's workers' compensation insurer settles its subrogation claim with that tortfeasor.1 We conclude that when, as here, a workers' compensation insurer settles its subrogation claim for reimbursement of medical expenses with a third-party tortfeasor, the injured employee's claim for past medical expenses is extinguished completely. Because the injured employee need not present evidence of either billed or paid medical expenses in the absence of a viable claim for such expenses, the collateral source rule is not implicated under these circumstances. The court of appeals therefore erred in remanding for a new trial on medical expenses based on a perceived misapplication of that rule. Accordingly, we reverse.
I. Facts and Procedural History
¶2 William Scholle worked for United Airlines, Inc., driving luggage tugs from the terminal to waiting planes, loading or unloading the bags, and returning to the terminal. In June 2012, Scholle was stopped at a stop sign on a return trip to the terminal when he was rear-ended by Daniel Moody, an employee of Delta Air Lines, Inc. Scholle sustained several serious injuries that required him to miss work and to receive medical treatment over the course of several years. He promptly applied for and received workers' compensation insurance benefits from United, a self-insured employer under Colorado's workers' compensation scheme. Pursuant to Colorado's workers' compensation laws, United covered all medical expenses resulting from Scholle's on-the-job injuries, as well as a portion of his lost wages. Scholle's medical providers apparently produced bills for the services he received that reflected costs in excess of what is permitted by the workers' compensation fee schedule, though they never tried to collect amounts beyond those permitted by the fee schedule.
¶3 In 2014, United exercised its subrogation right and sued Delta and Moody to recover the payments it made to and on behalf of Scholle. Scholle separately sued Delta and Moody for their negligence, seeking to recover compensation for economic damages, noneconomic damages, physical impairment, and disfigurement he suffered as a result of the collision. The trial court consolidated the actions. Eventually, Delta settled United's subrogation claim, and the trial court dismissed United's case. Scholle's claims against Moody were later dismissed as well, leaving only Scholle and Delta as parties. Delta admitted liability for the accident, and the case went to trial on damages.
¶4 In pretrial motions in limine, Scholle argued that the collateral source rule should preclude Delta from admitting evidence of the amount paid by Scholle's workers' compensation insurance to cover the medical expenses arising from his injuries. Instead, Scholle contended, the higher amounts billed by his medical providers reflected the true reasonable value of the medical services provided to him and should be admissible at trial.
¶5 The trial court disagreed, reasoning that when Delta settled with United, it effectively paid Scholle's medical expenses, such that amounts paid for those expenses were no longer payments by a collateral source. The court further noted that, under the workers' compensation statute, any amount billed for medical treatment in excess of the statutory fee schedule is "unlawful," "void," and "unenforceable." § 8-42-101(3)(a)(I), C.R.S. (2020). Therefore, the court determined that "[a]llowing Scholle to introduce evidence of any amount billed in excess of that actually paid by United would allow Scholle to seek damages for bills that never, as a matter of law, amounted to a legal obligation to pay." Finally, the court concluded that, in the context of payments made under the workers' compensation statute, amounts billed are irrelevant under CRE 401 and, "even if remotely relevant," would confuse the issues and should be excluded under CRE 403.
¶6 At trial, the jury returned a verdict for Scholle totaling approximately $1.5 million. This verdict was, however, set aside after the court granted Delta's motion for a new trial due to misconduct by Scholle's counsel, the details of which are not relevant here. In the resulting bench trial, the court awarded Scholle $64,750 in noneconomic damages and $194,426 in economic damages. In light of Delta's settlement with United, the court reduced the award by the amount that United paid in workers' compensation, effectively reducing Scholle's economic damages award to zero.
¶7 A split division of the court of appeals reversed the judgment with respect to Scholle's medical expenses. Scholle v. Delta Air Lines, Inc., 2019 COA 81M, ¶ 93, ––– P.3d ––––. The majority began by explaining the evidentiary component of Colorado's collateral source rule, codified at section 10-1-135(10)(a), C.R.S. (2020). Scholle, ¶¶ 17-18. The majority noted that the policy rationale behind the rule is that a tortfeasor should not benefit, through reduced liability, from compensation or benefits that an injured party receives from an entirely collateral source. Id. at ¶ 19. Moreover, the benefits encompassed by the collateral source rule may include not only direct payments but also the benefits of an insurance arrangement through which a medical provider agreed to accept a discounted rate for services. Id. at ¶ 21 (citing Volunteers of Am. Colo. Branch v. Gardenswartz , 242 P.3d 1080, 1085 (Colo. 2010) ).
¶8 Workers' compensation payments, the majority concluded, are collateral source benefits because an employee's entitlement to receive them arises out of the employment contract between the employee and employer. Id. at ¶ 33. Delta had not contributed to the contract between Scholle and United and was not entitled to "reap the benefit of a contract for which [it] paid no compensation." Id. at ¶ 34 (quoting Gardenswartz, 242 P.3d at 1083 ). Therefore, the majority determined, the trial court should not have permitted Delta to introduce evidence of the amounts United paid Scholle's medical providers for the services he received. Id. at ¶ 32.
¶9 The division majority rejected Delta's argument that because any amount billed in excess of the workers' compensation fee schedule is "void," "unlawful," and "unenforceable," § 8-42-101(3)(a)(I), Scholle could not claim entitlement to any damages for medical expenses beyond the amount United already paid. Scholle, ¶¶ 45-49. The majority found this case indistinguishable from Gardenswartz , in which we held that even billed amounts for which a plaintiff could not be liable pursuant to the terms of his insurance contract could form the basis for determining the reasonable value of medical services in a suit against a tortfeasor. Gardenswartz, 242 P.3d at 1085-88. Accordingly, the division remanded for a new trial on Scholle's past medical expenses. Scholle, ¶ 54.
¶10 Judge Richman dissented on this issue, arguing that the court did not need to reach the evidentiary question presented in this case because Scholle's claim for past medical expenses was extinguished when Delta settled United's subrogation claim. Id. at ¶ 96 (Richman, J., concurring in part and dissenting in part). Further, the dissent reasoned that because any amount billed in excess of the workers' compensation fee schedule was void as a matter of law, Scholle should not be permitted to pursue any amounts for past medical expenses in excess of what United already paid. Id. at ¶ 97.
¶11 Delta petitioned this court for certiorari review, which we granted.
II. Analysis
¶12 After discussing the appropriate standard of review, we turn to the text of the Workers' Compensation Act ("WCA" or "Act") to examine the scope and consequences of a workers' compensation insurer's subrogation rights when a workplace injury was caused by the negligence of a third-party tortfeasor. We then consider whether a plaintiff-employee can pursue damages for amounts billed in excess of the workers' compensation fee schedule after an insurer has settled its subrogation claim with a third-party tortfeasor. We conclude that United's settlement with Delta extinguished Scholle's claim for medical expense damages with regard to those services paid for by his workers' compensation insurance. Because Scholle cannot pursue a claim against Delta for damages arising out of past medical expenses relating to the services covered by workers' compensation, the collateral source rule has no application in this case.
A. Standard of Review ¶13 The dispute between the parties in this case is a matter of statutory interpretation and is therefore subject to de novo review. People v. Baker , 2019 CO 97M, ¶ 13, 452 P.3d 759, 762. Our principal responsibility when construing a statute is "to ascertain and give effect to the General Assembly's purpose and intent." Id. In doing so, "we look to the entire statutory scheme in order to give consistent, harmonious, and sensible effect to all of its parts, and we apply words and phrases in accordance with their plain and ordinary meanings." Bill Barrett Corp. v. Lembke, 2020 CO 73, ¶ 14, 474 P.3d 46, 49 (quoting Blooming Terrace No. 1, LLC v. KH Blake St., LLC, 2019 CO 58, ¶ 11, 444 P.3d 749, 752 ). If the statutory language is clear and unambiguous, we apply it as written without needing to apply other rules of statutory interpretation. Id.
B. Applicable Law—The Workers' Compensation Act
1. Medical Benefits Provided by Workers' Compensation
¶14 The WCA provides for a range of benefits to employees injured on the job, including medical expenses, lost wages, disability benefits, compensation for disfigurement, and death and burial benefits. See §§ 8-42-101 to - 125, C.R.S. (2020). The statutory provision detailing an injured employee's entitlement to medical benefits specifies that the employer is required to furnish whatever medical treatment "may reasonably be needed at the time of the injury or occupational disease and thereafter during the disability to cure and relieve the employee from the effects of the injury." § 8-42-101(1)(a).
¶15 The statute goes on to require the Director of the Workers' Compensation Division to publish "a schedule fixing the fees for which all ... medical services ... pertaining to injured employees under this section shall be compensated." § 8-42-101(3)(a)(I). That schedule is published annually, and
[i]t is unlawful, void, and unenforceable as a debt for any physician, chiropractor, hospital, person, expert witness, reviewer, evaluator, or institution to contract with, bill, or charge any party for services, rendered in connection with injuries coming within the purview of this article or an applicable fee schedule, which are or may be in excess of said fee schedule unless such charges are approved by the director.
Id.
2. Subrogation Rights of a Workers' Compensation Insurer
¶16 Under the WCA, if an employee injured by a third party elects to receive workers' compensation benefits, the workers' compensation insurer receives an "assignment" of the "cause of action" that the injured employee might have against the third party. § 8-41-203(1)(b), C.R.S. (2020). This "assignment," however, is not an outright ownership interest in the injured employee's claim. Instead, the WCA is clear that an insurer, having paid benefits, is subrogated to the underlying claims the employee would have against a third-party tortfeasor. See, e.g., § 8-41-203(1)(b) (insurer's interests are "subrogated to the rights of the injured employee"); § 8-41-203(1)(c) (referring to insurer's "right of subrogation"); § 8-41-203(1)(f) (referring to insurer's "subrogation right"). ¶17 Subrogation is the "substitution of one person for another; that is, one person is allowed to stand in the shoes of another and assert that person's rights against the defendant." Am. Fam. Mut. Ins. Co. v. DeWitt, 218 P.3d 318, 323 (Colo. 2009) (quoting Dodd, Law of Remedies, § 4.3(4) (2d ed. 1976)). Thus, the insurer's subrogation right is derivative of the employee's rights, merely allowing the insurer to take over the employee's claims to the extent that the statute permits. Tate v. Indus. Claim Appeals Off., 815 P.2d 15, 18 (Colo. 1991).
¶18 The scope of the subrogation right provided to insurers by the WCA includes "all compensation and all medical, hospital, dental, funeral, and other benefits and expenses to which the employee ...[is] entitled" under the Act. § 8-41-203(1)(c). The Act explains that "[t]he assigned and subrogated cause of action provided by this section ... [s]hall extend to all moneys collected from the third party causing the injury for all [e]conomic damages" and to whatever expenses the insurer paid in disfigurement damages. § 8-41-203(1)(d)(I). But the subrogated cause of action "[s]hall not extend to moneys collected for noneconomic damages awarded for pain and suffering, inconvenience, emotional stress, or impairment of quality of life." § 8-41-203(1)(d)(II). The statute makes clear that the insurer pursuing its subrogation claim "shall not be entitled to recover any sum in excess of the amount of compensation for which [it] is liable [under the Act] to the injured employee, but to that extent [the insurer] shall be subrogated to the rights of the injured employee" against the third party. § 8-41-203(1)(b).
¶19 An insurer's subrogation right gives it several options when an on-the-job injury was caused by a third party and the insurer has paid workers' compensation benefits. The insurer may choose to wait and see whether the employee pursues tort claims against the third party for the injury. If the employee does pursue a claim, the insurer is entitled (though not required) to intervene in the suit. § 8-41-203(4)(a)(I), (c)(I). The insurer may also choose to go ahead and pursue its subrogation claim against the third party before the injured employee has filed any claim. § 8-41-203(4)(a)(II), (e). ¶20 The shared right to pursue a third-party tortfeasor for compensation established by this subrogation scheme is significantly different from the treatment of an insurer's subrogation rights in the traditional insurance context. For most personal injury claims, subrogation is permitted "only if the injured party has first been fully compensated for all damages arising out of the claim." § 10-1-135(3)(a)(I) / C.R.S. (2020). Section 10-1-135 sets out a detailed system for determining whether an injured party has been made whole by the party responsible for the injury and, if so, what reimbursement an insurer can seek for its payments from the injured party. See generally Christopher P. Koupal, CRS § 10-1-135 and the Changing Face of Subrogation Claims in Colorado, 40 Colo. Law. 41 (Feb. 2011). The statute prohibits an insurer from pursuing a direct subrogation claim against a third-party tortfeasor unless (1) the injured party has not pursued a claim and (2) the statute of limitations on the claim will expire in sixty days or less. § 10-1-135(6)(a)(I)-(II). Workers' compensation is explicitly excluded from these statutory provisions. § 10-1-135(10)(c). As a result, a workers' compensation insurer may settle its subrogation claim with a third-party tortfeasor before the employee seeks or receives any compensation from the same tortfeasor. ¶21 Because a workers' compensation insurer pursuing or settling a subrogation claim is standing in the shoes of the employee with regard to the claim, when an insurer settles the subrogation claim, it is in fact settling the employee's claim. Ferrellgas, Inc. v. Yeiser, 247 P.3d 1022, 1027 (Colo. 2011) ("[Insurer's] subrogation interest ... effectively allowed it to stand in [the insured's] shoes with respect to that amount, and [the settlement of insurer's] subrogation interest was thereby an effective settlement with [the insured] of her interest in the [covered] amount."). As we explained in Ferrellgas , once a subrogated insurer "has resolved the claim, either through litigation or settlement, the insured is no longer entitled to recover the [amount she received through her insurer] from the responsible party." Id. ; see also Lebsack v. Rios , No. 16-CV-02356, 2017 WL 5444568, at *3 (D. Colo. Nov. 14, 2017) (applying Colorado's WCA and concluding that, "when defendants settled [the insurer's] subrogation claim, [the plaintiff]'s claim for the amounts covered by the workers' compensation statute was extinguished"). ¶22 Of course, the insurer's resolution of the subrogated claim only extinguishes an employee's claims to the extent they are co-extensive with that subrogated claim. Colo. Comp. Ins. Auth. v. Jorgenson, 992 P.2d 1156, 1163 (Colo. 2000) (explaining that "the right of subrogation applies to the claimant's rights to recover against the tortfeasor for the same injuries for which she is entitled to worker's compensation benefits"). The WCA is explicit that "[n]othing in this section shall be construed as limiting in any way the right of the injured employee to ... proceed against the third party causing the injury to recover any damages in excess of the subrogation rights described in this section." § 8-41-203(1)(f). Thus, even after resolution of a subrogation claim, an injured employee may pursue noneconomic damages and any economic damages not covered by the workers' compensation insurer.
C. Application
¶23 United paid for all Scholle's medical care related to the on-the-job injury, as well as other compensation provided under the WCA. The airline then pursued its subrogation claim directly against the third-party tortfeasors. Delta ultimately settled with United, and United's subrogation claim was dismissed. Because United was standing in Scholle's shoes when it pursued the claim against Delta, United's settlement extinguished any claim that Scholle would have had to recover medical expense damages for services provided in relation to the on-the-job injury and paid by workers' compensation. As the U.S. District Court for the District of Colorado explained when confronting a nearly identical circumstance, "[t]he settlement, regardless of the terms, concluded the dispute with the defendants to the extent of the injuries and losses that were covered under the workers' compensation statute." Lebsack, 2017 WL 5444568, at *3.
¶24 Scholle argues that United's settlement could, at most, extinguish his right to pursue the amount that it paid for medical expenses but could not extinguish his right to recover the difference between the amount his medical providers billed for the services they provided and the amount that United actually paid for those services. He asserts that this argument is supported by the language of section 8-41-203(b), providing that a subrogated insurer "shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable" under the Act and that "to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury." This provision, Scholle argues, must mean that United's subrogation right extended only to the amount it paid, and that he retains a claim for medical expenses for any amount "in excess" of what United paid.
¶25 We are unconvinced by this argument. The WCA provides that the insurer's right of subrogation applies to all medical benefits and expenses that the employee is entitled to under the Act. § 8-41-203(1)(c). What are the medical benefits and expenses that the Act entitles the employee to receive? An employee is entitled to have his employer furnish whatever medical treatment "may reasonably be needed at the time of the injury" or thereafter "to cure and relieve the employee from the effects of the injury." § 8-42-101(1)(a). Thus, United's subrogation right was to Scholle's claim to compensation for all medical treatment that was reasonably needed to relieve him from the effects of his on-the-job injury and that United paid for. When United settled with Delta, the settlement extinguished any claim for past medical expenses arising out of the treatment for which United paid. Contrary to the conclusion reached by the court of appeals, see Scholle, ¶ 43 n.4 (majority opinion), there is no separate claim for the difference between amounts billed and amounts paid that can be decoupled from the underlying claim for recovery of medical expenses.2 ¶26 Our conclusion is bolstered by the fact that the WCA makes it "unlawful, void , and unenforceable as a debt for any [medical provider] to contract with, bill, or charge any party for services ... in excess of [the WCA] fee schedule." § 8-42-101(3)(a)(I) (emphasis added). If any bill for medical services in excess of what United paid —and then settled—would be void under the Act, it makes little sense to conclude that Scholle retained any claim to damages for medical expenses that survived United's settlement with Delta.
¶27 For two reasons, this circumstance is easily distinguishable from the one we confronted in Gardenswartz , where we concluded that even though the plaintiff "could not be billed the difference between the amounts billed by his healthcare providers and his insurer's actual payments," he could nonetheless seek to prove the reasonable value of the medical services he received by offering evidence of the amounts billed for those services. 242 P.3d at 1085. First, the question in Gardenswartz was simply what evidence could be presented to prove the reasonable value of medical services provided. Here, because Scholle's claim for damages arising out of medical services has been extinguished, the evidentiary question is not at issue. Second, there is a meaningful difference between amounts that cannot, under the terms of a private contract, be collected from an injured party and amounts that are declared void by statute. A bill that is void is more than uncollectable — it is "of no legal effect[,] ... an absolute nullity." Void, Black's Law Dictionary (11th ed. 2019). Scholle's claim to damages for medical expenses above and beyond the claim settled by United can therefore not be rescued by analogy to Gardenswartz and our other collateral source rule case law.
¶28 Of course, Scholle is entitled to seek any damages from Delta that were not extinguished by the settlement of United's subrogation claim. These could include noneconomic damages or any economic damages not fully covered by workers' compensation such as lost wages, physical impairment, disfigurement, and noncovered medical services.
¶29 Because Scholle's claim to damages for medical expenses was extinguished by United's settlement of its subrogation claim, there is no reason to present evidence of either the amounts billed or the amounts paid for medical expenses. Thus, the applicability of the pre-verdict evidentiary component of the collateral source rule is not at issue.
III. Conclusion ¶30 For the foregoing reasons, we conclude that an injured employee's claim to recover damages for past medical expenses is extinguished when the workers' compensation insurer resolves its subrogation claim with the third-party tortfeasor. Because the injured employee no longer has a claim for damages arising out of past medical expenses covered by workers' compensation, there is no reason to present evidence of either amounts billed or amounts paid for medical services, and the pre-verdict evidentiary component of the collateral source rule is not at issue. Accordingly, we reverse the judgment of the division below and remand the case for further proceedings consistent with this opinion.
JUSTICE GABRIEL dissents, and JUSTICE HOOD and JUSTICE BERKENKOTTER
join in the dissent.
JUSTICE GABRIEL, dissenting. ¶31 The majority concludes that when a workers' compensation insurer settles its subrogated interest with a tortfeasor, the injured party's claim for past medical expenses is extinguished completely. Maj. op. ¶¶ 1, 30. From this premise, the majority concludes that plaintiff William Scholle had no reason to present evidence of either billed or paid medical expenses (because he no longer had a viable claim for those expenses) and therefore the collateral source rule was not implicated in this case. Id. at ¶¶ 1, 29.
¶32 I disagree with the majority's premise, and therefore I disagree with its conclusion. Unlike the majority, I perceive nothing in the applicable statutes that supports a conclusion that Scholle's claim for past medical expenses against defendant Delta Air Lines, Inc. was extinguished in full when United Airlines, as the workers' compensation provider, settled its subrogated interest with Delta. To the contrary, I believe that the pertinent statutes expressly preserved Scholle's claim, subject to Delta's right to a setoff.
¶33 Accordingly, unlike the majority, I would conclude that the collateral source rule is at issue here, and applying that rule to the facts before us, I would further conclude that evidence of the amount of workers' compensation benefits that United paid would be inadmissible in the trial of any claim by Scholle against Delta and, conversely, evidence of the reasonable value of the medical services provided to Scholle would be admissible in the trial of such a claim.
¶34 I would therefore affirm the division's judgment, and thus, I respectfully dissent.
I. Analysis
¶35 The majority accurately sets forth the relevant factual background, and I need not repeat that recitation here. I therefore will begin by explaining why I believe the majority errs in concluding that United's settlement of its subrogated interest with Delta extinguishes Scholle's entire cause of action for past medical expenses against Delta. Concluding then that the collateral source rule applies in this case, I offer my view as to how it should apply. I end by addressing what I perceive to be the concerning policy ramifications of the majority's ruling.
A. United's Subrogated Interest
¶36 The majority concludes that United's settlement of its subrogated interest with Delta completely extinguished Scholle's entire claim for past medical expenses. I respectfully disagree.
¶37 Section 8-41-203(1)(a), C.R.S. (2020), provides:
If any employee entitled to compensation under articles 40 to 47 of this title is injured or killed by the negligence or wrong of another not in the same employ, such injured employee or, in case of death, such employee's dependents, may take compensation under said articles and may also pursue a remedy against the other person to recover any damages in excess of the compensation available under said articles.
(Emphasis added.)
¶38 On its face, this provision expressly preserves Scholle's right to recover from Delta any damages in excess of the compensation available under the workers' compensation statutes. See also Colo. Comp. Ins. Auth. v. Jorgensen , 992 P.2d 1156, 1162 (Colo. 2000) ("The Workers' Compensation Act allows an employee to pursue personal injury claims against tortfeasors, while receiving workers' compensation benefits."); Tate v. Indus. Claim Appeals Off., 815 P.2d 15, 17 (Colo. 1991) (noting that an injured employee may elect to receive workers' compensation benefits and also sue the tortfeasor for the full amount of damages allowable in tort in excess of the amount of compensation benefits for which the insurer is liable); Chavez v. Kelley Trucking, Inc., 275 P.3d 737, 740 (Colo. App. 2011) (noting that divisions of the court of appeals have characterized the partial assignment and subrogation of claims set forth in the workers' compensation statute as "two claims — one ‘owned’ by the employee and one ‘owned’ by [the employer's insurance] carrier") (quoting Sneath v. Express Messenger Serv., 931 P.2d 565, 568 (Colo. App. 1996) ).
¶39 Section 8-41-203(1)(b), in turn, provides, in pertinent part:
The payment of compensation pursuant to articles 40 to 47 of this title shall operate as and be an assignment of the cause of action against such other person to [the workers' compensation insurer or fund], if compensation is payable from said funds, and otherwise to the person, association, corporation, or insurance carrier liable for the payment of such compensation. Said insurance carrier shall not be entitled to recover any sum in excess of the amount of compensation for which said carrier is liable under said articles to the injured employee, but to that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury.
(Emphasis added.)
¶40 The majority construes this provision to mean that once United paid compensation benefits to Scholle, it became subrogated to Scholle's claim for all past medical expenses. Maj. op. ¶¶ 16-18, 21-23, 25. Accordingly, in the majority's view, when United settled its subrogated interest with Delta, Scholle's claim for past medical benefits was completely extinguished. Id. at ¶¶ 23, 25. But that is not what section 8-41-203(1)(b) says.
¶41 Our case law has long made clear that this statute effects a partial assignment of plaintiff's claims. See, e.g., Jorgensen, 992 P.2d at 1165 (concluding that a workers' compensation insurer's subrogation rights do not extend to every right to recovery that an injured employee and his or her dependents may have against a tortfeasor but rather reach only the employee's rights to recover the economic damages for which the carrier is liable or has assumed liability); see also Chavez, 275 P.3d at 740 (characterizing the Workers' Compensation Act as establishing a "partial assignment and subrogation of claims"); Sneath, 931 P.2d at 568 (same).
¶42 Section 8-4-203(1)(b) thus limits a workers' compensation carrier's recovery to the amount of compensation for which it was liable. The provision then states, "[T]o that extent said carrier shall be subrogated to the rights of the injured employee against said third party causing the injury." Id. (emphasis added).
¶43 Accordingly, unlike the majority, I do not believe that United was subrogated to all of Scholle's rights against Delta to recover past medical expenses. Nor did United obtain an assignment of the entirety of Scholle's cause of action against Delta. Rather, United was subrogated only to the extent of the amounts that it paid on Scholle's behalf. And section 8-41-203(1)(a) expressly reserved to Scholle any damages that he suffered above that amount.
¶44 For these reasons, I do not agree with the majority that United's settlement extinguished Scholle's entire claim for past medical expenses. Rather, it extinguished Scholle's claim only up to the amount of benefits that United paid him. And this, in turn, entitled Delta to a post-verdict setoff of that amount from any judgment that Scholle might ultimately recover against Delta.
¶45 Because I do not agree that United's settlement with Delta extinguished Scholle's entire claim for past medical expenses, I believe that Scholle retained part of that claim and therefore the collateral source rule is, in fact, at issue in this case.
¶46 In so concluding, I am not persuaded by the majority's reliance on section 10-1-135(10)(c), C.R.S. (2020). To be sure, that subsection preserves a workers' compensation carrier's subrogation and lien rights. Id. But this begs the question as to what subrogation rights United had here. The majority presumes that United was subrogated to Scholle's entire interest in recovering past medical expenses. For the reasons set forth above, however, I disagree with that premise. Moreover, I note that section 10-1-135(10)(a) expressly states that nothing in section 10-1-135 modifies section 13-21-111.6, C.R.S. (2020), which is our statutory collateral source rule. Thus, in my view, section 10-1-135(10) makes clear that the collateral source rule remains in effect, notwithstanding any subrogated interest that United might have. ¶47 I am also unpersuaded by the majority's reliance on Ferrellgas, Inc. v. Yeiser, 247 P.3d 1022 (Colo. 2011), and Lebsack v. Rios, No. 16-cv-02356-RBJ, 2017 WL 5444568 (D. Colo. Nov. 14, 2017).
¶48 Ferrellgas did not involve a partial assignment or subrogated interest under the Workers' Compensation Act. See Ferrellgas, 247 P.3d at 1024-28. Rather, it involved a breach of contract claim and the law of subrogation in the context of insurance generally. Id. at 1025, 1027. Specifically, in Ferrellgas , the plaintiff, Yeiser, contracted with the defendant, Ferrellgas, to deliver propane to a vacation house. Id. at 1024. Ferrellgas did not do so on a timely basis, and as a result, the house's pipes froze and burst, causing substantial damage. Id. Yeiser had a homeowner's insurance policy with Farmers Insurance Group, under which Farmers ultimately reimbursed Yeiser and her contractors in the amount of approximately $212,000. Id. Farmers then asserted a subrogation claim against Ferrellgas for the amount that it had paid Yeiser, and Ferrellgas ultimately settled this claim for approximately $173,000. Id.
¶49 Thereafter, Yeiser sued Ferrellgas for breach of contract, and a jury returned a verdict of approximately $314,000. Id. at 1025. The issue then became whether Ferrellgas was entitled to a setoff of the $212,000 that Farmers had paid Yeiser, or of only the $173,000 that Ferrellgas had paid to settle Farmers' subrogation claim. Id. at 1027.
¶50 We ultimately concluded that Farmers had a subrogated interest in the $212,000 that it had paid and that, because it stood in Yeiser's shoes as to that amount, once it settled its interest, any claim that Yeiser had to recover that amount had been extinguished. Id. at 1027-28. Therefore, Ferrellgas was entitled to set off the full $212,000. Id. at 1028.
¶51 In my view, Ferrellgas does not support Delta's (or the majority's) view in the case now before us. Indeed, I believe that it supports my position. In particular, to the extent that Yeiser's right to recover any part of Farmers' subrogated interest in Ferrellgas was extinguished, it was extinguished only to the extent of the benefits that Farmers had paid Yeiser, regardless of any amount that Farmers had agreed to accept from Ferrellgas to settle that subrogated interest. Id. at 1027-28.
¶52 The same is true in this case. For the reasons discussed above, United's subrogated interest was limited to the amount that it paid Scholle, in the same way that Farmers' subrogated interest in Ferrellgas was limited to the amount that it paid Yeiser. When United settled its subrogated interest with Delta, it extinguished any right that Scholle may have had to recover the amount of benefits that United had paid him. Thus, Delta is entitled to a setoff of that amount, just like Ferrellgas was entitled to set off the full amount that Farmers had paid Yeiser. Nothing in Ferrellgas, however, said that Yeiser's entire claim was extinguished. To the contrary, Yeiser pursued her breach of contract claim against Ferrellgas and recovered over $100,000 more than the benefits that Farmers had paid her. In my view, Scholle is likewise entitled to pursue any damages that he could prove in excess of the amount that United had paid him.
¶53 In Lebsack, 2017 WL 5444568, at *1, an injured plaintiff had recovered workers' compensation benefits and then sued the tortfeasors, but in the interim, the insurer sued the tortfeasors to recover its subrogated interest and then settled that claim. The question became whether the insurer's settlement extinguished both its subrogated interest and the plaintiff's claims or just its subrogated interest. Id. at *3. In an unpublished order, the federal district court concluded that the settlement extinguished the plaintiff's entire claim, citing Ferrellgas without any analysis or discussion of the above-noted distinctions between the claims at issue in that case and those before the federal court. Id.
¶54 We, of course, are not bound by the federal court's interpretation of our state's law. See First Nat'l Bank v. Rostek, 182 Colo. 437, 514 P.2d 314, 316 n.1 (1973). In any event, for the reasons set forth above, I respectfully believe that the Lebsack court misread our applicable statutes and our decision in Ferrellgas . Accordingly, I would give Lebsack no weight here.
¶55 For these reasons, I believe that the collateral source rule is at issue in this case, and I proceed to explain how I would apply it here.
B. Collateral Source Rule
¶56 Colorado's collateral source rule includes two parts: (1) a pre-verdict evidentiary component, which is now codified at section 10-1-135(10)(a) ; and (2) a post-verdict setoff rule, which is codified at section 13-21-111.6. See Wal-Mart Stores, Inc. v. Crossgrove, 2012 CO 31, ¶ 9 & n.3, 276 P.3d 562, 564 & n.3. To understand how these provisions operate, it is useful to understand their common-law origins and the policies driving them.
¶57 Prior to the enactment of section 13-21-111.6, the common-law collateral source rule provided that compensation received by an injured party from a collateral source that was independent of the wrongdoer and to which the wrongdoer had not contributed would not diminish the damages otherwise recoverable by the injured party from the wrongdoer. Crossgrove, ¶ 10, 276 P.3d at 565. The policy underlying this rule was that a tortfeasor should not benefit, in the form of reduced damages, from an injured party's receipt of collateral source benefits. Id.
¶58 To effectuate this policy goal, the common-law rule applied pre-verdict to preclude evidence of the plaintiffs' receipt of collateral source benefits. Id. at ¶ 12, 276 P.3d at 565. The reason for such an exclusion was that such evidence could have led the fact-finder to reduce the plaintiffs' damages award based on the fact that they had already recovered their losses from the collateral source. Id. In addition, the collateral source rule applied post-verdict to prohibit a trial court from reducing successful plaintiffs' damages based on their receipt of collateral source benefits. Id. at ¶ 11, 276 P.3d at 565.
¶59 The application of the foregoing common-law collateral source rule often resulted in tort plaintiffs' double recovery of medical expenses because a collateral source would pay the expenses incurred as a result of a tortfeasor's conduct and the plaintiffs could then recover the same expenses from the tortfeasor in the form of damages. Id. at ¶ 14, 276 P.3d at 565. To avoid this result, the legislature enacted section 13-21-111.6. Id., 276 P.3d at 565-66. This statute effectively abrogated the post-verdict component of the common-law rule by requiring trial courts to reduce a successful plaintiff's verdict by the amount that the plaintiff "has been or will be wholly or partially indemnified or compensated for his loss by any other person, corporation, insurance company, or fund in relation to the injury ... sustained." Id. , 276 P.3d at 566 (quoting section 13-21-111.6).
¶60 Section 13-21-111.6, however, preserved the common-law post-verdict component of the collateral source doctrine to a limited extent, namely, by prohibiting trial courts from reducing a plaintiff's verdict by the amount of compensation that the plaintiff has received, or would receive, from "a benefit paid as a result of a contract entered into and paid for by or on behalf of" the plaintiff. Id. at ¶ 15, 276 P.3d at 566 (quoting section 13-21-111.6). Like the common-law collateral source rule, this so-called contract exception prevents the tortfeasor from benefitting from the plaintiff's purchase of insurance. Id. at ¶ 16, 276 P.3d at 566.
¶61 Section 13-21-111.6 likewise effectively preserved the pre-verdict evidentiary component of the common-law collateral source rule. See id. at ¶ 18, 276 P.3d at 566. That component is now contained in section 10-1-135(10)(a), which provides, "The fact or amount of any collateral source payment or benefits shall not be admitted as evidence in any action against an alleged third-party tortfeasor or in an action to recover benefits under section 10-4-609[, C.R.S. (2020)]."
¶62 Applying the foregoing principles here, I do not believe that one could reasonably deny that the workers' compensation benefits in this case were payments from a collateral source. Indeed, we made this clear eighty years ago. See Riss & Co. v. Anderson, 108 Colo. 78, 114 P.2d 278, 281 (1941) (stating that if a plaintiff's benefit plan is a part of the plaintiff's compensation as an employee, "then he bought and paid for such insurance" and, in that case, "a tortfeasor may not plead his victim's prudence and foresight to relieve him from the consequences of his own wrong"); see also Combined Commc'ns Corp. v. Pub. Serv. Co., 865 P.2d 893, 902 (Colo. App. 1993) (concluding that workers' compensation benefits fall within the contract exception to the collateral source rule and thus are not to be set off from a judgment against a tortfeasor). Simply stated, absent workers' compensation insurance, Scholle would have had to pay the full amount that his medical providers would have billed him. It is only because he had workers' compensation insurance (for which he gave consideration in the form of his service as a United employee) that he was able to benefit from the capped rates placed on his providers.
¶63 Under our long-settled precedent, Delta may not take advantage of these capped rates, which existed solely because Scholle had insurance. See Volunteers of Am. Colo. Branch v. Gardenswartz, 242 P.3d 1080, 1083 (Colo. 2010) (noting that the collateral source rule prevented the tortfeasor from standing in the plaintiff's shoes and enjoying the same discounted medical rates that the plaintiff's insurer received). Indeed, to conclude otherwise would allow exactly what our collateral source rule has long prohibited. See id. ; see also Crossgrove , ¶ 16, 276 P.3d at 566 (noting that the collateral source rule prevents a tortfeasor from "benefitting from the plaintiff's purchase of insurance").
¶64 Accordingly, I believe that the collateral source rule applies here, and under that rule's express language, the fact or amount of workers' compensation benefits paid by United would be inadmissible in any action by Scholle against Delta. See § 10-1-135(10)(a) ; accord Crossgrove, ¶¶ 24-25, 276 P.3d at 567-68. Conversely, under what appears to be the majority rule in this country, Scholle would be entitled to introduce in any trial against Delta evidence of the value of the medical costs that he would have incurred absent any workers' compensation insurance. See Forfar v. Wal-Mart Stores, Inc., 2018 COA 125, ¶ 28, 436 P.3d 580, 586 (noting that "[a] majority of courts have concluded that plaintiffs are entitled to claim and recover the full amount of reasonable medical expenses charged, based on the reasonable value of medical services rendered, including amounts written off from the bills pursuant to contractual rate reductions") (quoting Felts v. Bd. of Cnty. Comm'rs, No. 13-CV-1094-MCA/SCY, 2017 WL 3267742, at *4 (D.N.M. July 31, 2017) ).
¶65 In so concluding, I am not persuaded by Delta's contention that the actual value of the provider's services is inadmissible because (1) Delta contributed to that collateral source payment and (2) the workers' compensation schedule renders unlawful any billing above the scheduled amounts. I address these contentions in turn.
¶66 First, when our cases speak of a party's contributing to collateral source benefits, they are referring to, for example, payment of the premiums for the insurance coverage that the plaintiff had purchased. See, e.g., Gardenswartz, 242 P.3d at 1084-85 (noting that the contract exception to the collateral source rule denies a setoff of benefits resulting from a private insurance contract for which the injured party had paid monetary premiums); see also id. at 1083 ("If either party is to receive a windfall, the rule awards it to the injured plaintiff who was wise enough or fortunate enough to secure compensation from an independent source, and not to the tortfeasor, who has done nothing to provide the compensation and seeks only to take advantage of third-party benefits obtained by the plaintiff.").
¶67 Here, Delta contributed nothing toward Scholle's workers' compensation policy. Nor can its settlement with United be deemed to have done so. If it could, then any tortfeasor's partial settlement with an insurance carrier would be deemed to render the collateral source rule inapplicable. I am aware of no authority supporting such a position, and Delta cites no such authority.
¶68 Second, notwithstanding Delta's assertion to the contrary, the workers' compensation schedule did not render evidence of the value of the provider's services inadmissible. In this regard, Gardenswartz and Forfar are instructive.
¶69 In Gardenswartz, 242 P.3d at 1082, the plaintiff's insurer had negotiated for substantially discounted rates with the plaintiff's medical providers. Thus, although the plaintiff's medical bills totaled approximately $74,000, the insurer was able to satisfy these debts by paying only approximately $43,000. Id. Nonetheless, we concluded that the plaintiff was entitled to recover the billed amount, and not just the discounted amount accepted by the medical providers. Id. at 1085. In so concluding, we reasoned, among other things, that had the plaintiff not been insured, he would not have received the discounts and would have been responsible for the billed amount. Id. Because the discounts were the direct result of the insurance contract between the plaintiff and his insurer, under the contract exception to the collateral source rule, the tortfeasor was not entitled to those benefits. Id. at 1088.
¶70 The same principle applies here. Specifically, Delta is seeking to enjoy the capped medical rates that the providers were required to accept as a result of the fact that Scholle had workers' compensation insurance. Absent such insurance, however, Scholle would have been required to pay the full value of his providers' medical services, and Delta is not entitled to take advantage of the capped rates resulting from the existence of workers' compensation insurance (for which Scholle gave consideration in the form of his service as a United employee).
¶71 Forfar , ¶¶ 14-30, 436 P.3d at 584-86, is even more directly on point. In Forfar , the injured plaintiff's medical providers were covered by Medicare Plan B and thus could not recover more than Medicare allowed for their services. Id. at ¶ 14, 436 P.3d at 584. The question before the division was whether the collateral source rule's pre-verdict evidentiary component applied to the Medicare benefits paid, such that the plaintiff was permitted to introduce evidence of the reasonable value of the medical services that he received, notwithstanding the Medicare limits. Id. at ¶ 20, 436 P.3d at 585. The division concluded that the evidentiary bar applied because (1) the Medicare payments fell within the definition of a collateral source; (2) wrongdoers may not enjoy benefits procured by an injured plaintiff; and (3) a majority of courts have concluded that plaintiffs are entitled to claim and recover the full amount of the reasonable medical expenses charged, based on the reasonable value of such services. Id. at ¶¶ 21-28, 436 P.3d at 585-86. Thus, the division concluded that the Medicare benefits were a collateral source inadmissible as evidence under section 10-1-135(10)(a). Id. at ¶ 30, 436 P.3d at 586 ; see also id. (noting that "the reasonable value of Mr. Forfar's medical services was not limited to amounts that Medicare paid to his providers, even assuming they could receive no more from Mr. Forfar or anyone who might be vicariously liable to them, such as a guarantor").
¶72 In my view, the Forfar division's reasoning is persuasive and equally applicable here. The providers in this case, like those in Forfar , could not recover more than the amounts set forth by law. Because, however, the workers' compensation benefits at issue were payments from a collateral source, the fact that such capped rates exist would not preclude Scholle from introducing evidence of the reasonable value of the services rendered to him.
¶73 I am likewise unpersuaded by Delta's assertion that evidence of the actual value of the medical services provided is tantamount to the enforcement of an illegal contract. It is not. Rather, it amounts to evidence of the reasonable value of the services rendered to Scholle absent workers' compensation insurance, which our courts have said is the amount an injured party may recover. Gardenswartz, 242 P.3d at 1087-88 ; Forfar, ¶¶ 30-44, 436 P.3d at 586-88.
¶74 By contending that it was entitled to admit into evidence the amount of the benefits paid, Delta sought to take advantage of the fact that Scholle had insurance, but, as noted above, we have long held that a tortfeasor is not entitled to do so. See, e.g., Crossgrove, ¶ 16, 276 P.3d at 566 ; Gardenswartz, 242 P.3d at 1083-85. Indeed, holding to the contrary would overturn decades of our settled precedent.
¶75 For these reasons, I believe that the collateral source rule applies in this case and that it (1) precludes the admission in any action by Scholle against Delta of evidence of the amount of medical expenses paid by United and (2) permits Scholle to introduce at the trial of any such action evidence of the value of the medical expenses that he would have incurred had he not had workers' compensation insurance.
C. Policy Concerns
¶76 In reaching a contrary result, the majority's decision implicates what are, for me, a number of significant policy concerns.
¶77 First, for the reasons set forth above, I believe that the majority's decision undermines decades of settled precedent regarding the collateral source rule, and I thus expect that this decision will generate significant litigation in this area, to the detriment of the injured parties whom our legislature was trying to make whole.
¶78 Second, I fear that the majority's opinion will result in workers' compensation insurers and tortfeasors in cases like this racing to settle the insurers' subrogated interests, for the sole purpose of limiting the injured parties' recovery. Again, this strikes me as contrary to what the legislature was trying to achieve when it expressly provided for dual claims, one owned by the employee and one owned by the insurance carrier. See Chavez, 275 P.3d at 740 ; see also Gardenswartz, 242 P.3d at 1082-83 (noting that an injured plaintiff should be made whole by the tortfeasor, and not by a combination of compensation received from the tortfeasor and collateral sources, because the wrongdoer should not be permitted to benefit from a contract for which it paid no compensation).
¶79 In any event, this case highlights for me the need for legislative clarification as to the nature of workers' compensation carriers' subrogated interests and the claims that injured workers retain when they accept workers' compensation benefits and then separately pursue claims against tortfeasors. I respectfully urge the legislature to take up this issue.
II. Conclusion
¶80 For the foregoing reasons, I perceive nothing in the applicable statutes that supports a conclusion that Scholle's claim against Delta for past medical expenses was extinguished in full once United, as the workers' compensation provider, settled its subrogated interest with Delta. To the contrary, I believe that the pertinent statutes expressly preserved Scholle's claim, subject to Delta's right to a setoff of the amount that United paid Scholle. I would thus conclude that the collateral source rule applies here and that evidence of the amount of workers' compensation benefits that United paid would be inadmissible in the trial of any claim by Scholle against Delta and, conversely, evidence of the reasonable value of the medical services provided to Scholle would be admissible in the trial of such a claim.
¶81 Accordingly, I would affirm the judgment of the division below, and therefore, I respectfully dissent.
I am authorized to state that JUSTICE HOOD and JUSTICE BERKENKOTTER join in this dissent.
1 We granted certiorari to review the following issue:
Whether, in an action brought by an injured worker against a third-party tortfeasor, the collateral source rule as codified at 13-21-111.6, C.R.S. (2019), precludes admission of the amount of medical expenses paid by the plaintiff's workers' compensation insurer, where (1) amounts billed in excess of scheduled healthcare fees and rates allowed under the Workers' Compensation Act are unlawful, void, and unenforceable, and (2) the third-party defendant has already extinguished the workers' compensation insurer's subrogated interest in medical expenses paid by settling the insurer's claim.
2 We note that the situation presented by this case—in which the insurer settles a subrogation claim before the injured party has pursued his own claim against a third-party tortfeasor—is uniquely possible in the context of workers' compensation claims because these claims are excluded from section 10-1-135's general subrogation principles. In general, an insurer must wait to pursue any claim for reimbursement until the injured party has been made whole by the tortfeasor. § 10-1-135(3)(a)(I).