22 CO 51 R.W. and H.W., Petitioners v. The People of the State of Colorado, Respondent In the Interest of Minor Child E.W. No. 22SC86
Supreme Court of Colorado, En Banc
November 7, 2022
 
          ADVANCE
 SHEET HEADNOTE
 
 
          E. W.,
 a minor, lived in Colorado with her parents when she was
 adjudicated dependent and neglected pursuant to the
 Children's Code, § 19-3-102, C.R.S. (2022). At the
 time, Colorado was E.W.'s home state and the juvenile
 court had initial jurisdiction over the matter under the
 Uniform Child Custody Jurisdiction and Enforcement Act
 ("UCCJEA"), § 14-13-201, C.R.S. (2022). E.W.
 was then placed in an out-of-state placement through the
 Interstate Compact on the Placement of Children
 ("ICPC"), § 24-60-1801, C.R.S. (2022). Shortly
 thereafter, both parents separately left Colorado. No other
 court asserted jurisdiction over E.W. The juvenile court
 ultimately terminated the parent-child legal relationship as
 to both parents.
 
 
          The
 Colorado Supreme Court considers whether a Colorado court
 loses jurisdiction over a child-custody case simply by virtue
 of all parties leaving the
 
 1
 
 state. Reading the UCCJEA, ICPC, and Children's Code
 together, the court concludes that it does not and affirms
 the division's decision that the juvenile court had
 jurisdiction to enter the termination order.
 
 2
 
          
 Certiorari to the Colorado Court of Appeals Court of Appeals
 Case No. 20CA1724
 
 
          Judgment
 Affirmed
 
 
          
 Attorneys for Petitioner R.W.: The Morgan Law Office Kristofr
 P. Morgan Colorado Springs, Colorado
 
 
          
 Attorneys for Petitioner H.W.: James West Esq., LLC James
 West Longmont, Colorado
 
 3
 
          
 Attorneys for Respondent: El Paso County Attorney's
 Office Kenneth Hodges, County Attorney Colorado Springs,
 Colorado Melanie Douglas LLC Melanie Douglas Colorado
 Springs, Colorado
 
 
          
 Attorneys for Minor Child: Bettenberg, Maguire &
 Associates, LLC Alison A. Bettenberg, guardian ad litem
 Centennial, Colorado
 
 
          
 JUSTICE HART delivered the Opinion of the Court, in which
 CHIEF JUSTICE BOATRIGHT, JUSTICE MÁRQUEZ, JUSTICE
 HOOD, JUSTICE GABRIEL, JUSTICE SAMOUR, and JUSTICE
 BERKENKOTTER ] joined.
 
 
 4
 
           HART
 JUSTICE
 
 
          ¶1
 This case requires us to consider the interaction among three
 different but related statutory schemes. Specifically, we
 consider what should happen when (1) a Colorado court obtains
 initial jurisdiction over a child under the Uniform Child
 Custody Jurisdiction and Enforcement Act
 ("UCCJEA"), § 14-13-201, C.R.S. (2022); (2)
 that court adjudicates the child neglected or dependent
 pursuant to the Children's Code, § 19-3-102, C.R.S.
 (2022); (3) the child is then placed in an out-of-state
 placement through the Interstate Compact on the Placement of
 Children ("ICPC"), § 24-60-1801, C.R.S.
 (2022); (4) the parents subsequently move out of state; and
 (5) no other state court has asserted jurisdiction over the
 child. Does the Colorado court lose jurisdiction simply
 because the child and the parents have separately left
 Colorado? Reading these statutory provisions together, we
 conclude that it does not. Instead, in the circumstances
 presented here, the Colorado court retains jurisdiction over
 the child.
 
 
          I.
 Facts and Procedural History
 
 
          ¶2
 In September 2018, E.W. ("the Child" or
 "E.W.") was nine months old and living with her
 parents in Colorado, where she had been living since birth.
 That month, police responded to a domestic violence incident
 at the family home. While there, police observed that the
 home was cluttered with trash and debris and that it smelled
 like urine and feces. On a follow-up visit, a caseworker
 
 5
 
 observed that both parents appeared to be under the influence
 of alcohol or drugs and that E.W. appeared malnourished. E.W.
 was taken to the hospital, where she tested positive for
 methamphetamine and exhibited other signs of neglect.
 
 
          ¶3
 The El Paso Department of Human Services
 ("Department") filed a petition in dependency and
 neglect based on this evidence. E.W. was adjudicated
 dependent and neglected and placed in a foster home in
 Colorado. Both parents were referred to services to treat
 substance abuse and were put on a family services plan. Both
 struggled to engage with their treatment plans.
 
 
          ¶4
 Father requested that the Department explore a kin-like
 placement in Montana, where he was originally from and where
 he had friends and family who might be willing to care for
 E.W. After an investigation pursuant to the ICPC, the
 Department located a suitable kin-like placement in Montana.
 The court approved the ICPC placement, ordered that the
 Department retain custody of E.W., and noted that it retained
 jurisdiction over the case.
 
 
          ¶5
 In September 2019, the Department notified the court that
 Father and Mother had both moved to Montana. The court took
 notice of the parents' move from Colorado to Montana,
 further noting that it continued to have "jurisdiction
 over the subject matter and the parties" and
 "retain[ed] jurisdiction over this case and its prior
 orders remain in full force and effect." Pursuant to
 those orders, the Department continued its efforts to engage
 both parents in their treatment plans,
 
 6
 
 including flying a caseworker to Montana to meet with them in
 person and obtaining releases to speak with treatment
 providers in Montana. As had been the case while they were in
 Colorado, the parents continued to struggle with their
 treatment plans.
 
 
          ¶6
 On July 17, 2020, the court held a hearing on termination of
 parental rights and terminated the parent-child legal
 relationship as to both parents. In its order, the court
 again observed that it "ha[d] jurisdiction over the
 subject matter and the parties" and that it "shall
 retain jurisdiction over this case and its prior orders
 remain in full force and effect" pending the
 parents' pursuit of appellate remedies.
 
 
          ¶7
 Mother and Father appealed the termination, arguing that (1)
 the Colorado court lost "exclusive, continuing
 jurisdiction" over the matter under section
 14-13-202(1)(b), C.R.S. (2022), because the Child and the
 parents had left Colorado; (2) the proceeding to terminate
 parental rights was a new child-custody proceeding and a
 modification of a child-custody determination under the
 UCCJEA, which required the court to reestablish its
 jurisdiction; and (3) at the time of the termination
 proceeding, Montana, not Colorado, was the Child's home
 state under the UCCJEA.
 
 
          ¶8
 The division rejected these arguments and concluded that the
 Colorado court could only lose continuing jurisdiction under
 the UCCJEA if another state attempted to acquire jurisdiction
 over the Child. Here, because Montana never
 
 7
 
 sought jurisdiction, the Colorado court never lost continuing
 jurisdiction under the UCCJEA. The division further found
 that a termination proceeding is not a new child-custody
 proceeding, so the juvenile court was not required to
 reestablish initial jurisdiction. Given these conclusions,
 the division affirmed the juvenile court's judgment
 terminating the parent-child legal relationship.
 
 
          ¶9
 Mother and Father petitioned this court for certiorari review
 of the division's judgment. We granted certiorari on this
 question and also asked the parties to address whether the
 ICPC's "retention of jurisdiction" provision
 might form an independent basis for the court's
 jurisdiction.[1]
 
 8
 
          II.
 Analysis
 
 
          ¶10
 We begin by describing the applicable standard of review. We
 then explain the relevant provisions of the UCCJEA and note
 that all parties agree the Colorado court had initial
 jurisdiction over the case under the UCCJEA because Colorado
 was E.W.'s "home state" when the case
 commenced. We then consider whether any of the parents'
 arguments that the Colorado court lost that initial
 jurisdiction have merit. We conclude that they do not.
 
 
          ¶11
 After the Colorado court made its initial custody
 determination, it retained exclusive, continuing jurisdiction
 pursuant to section 14-13-202. The termination hearing was
 not a new child-custody proceeding requiring the juvenile
 court to reestablish jurisdiction. As we explained in
 People in the Interest of S.A.G., 2021 CO 38, ¶
 39 n.3, 487 P.3d 677, 685 n.3, termination is a remedy in a
 dependency and neglect proceeding, not a separate proceeding
 requiring independent jurisdiction. Finally, we note that
 these conclusions, which we reach in interpreting the UCCJEA,
 are the only way that the statute can be read in harmony with
 the ICPC and the Children's Code, and any ambiguity in
 the language of the UCCJEA must be resolved in light of that
 fact.
 
 
          A.
 Standard of Review
 
 
          ¶12
 We review de novo the statutory interpretation of whether a
 district court has subject matter jurisdiction over a
 child-custody proceeding. Brandt v. Brandt,
 
 9
 
 2012 CO 3, ¶ 18, 268 P.3d 406, 410. When interpreting a
 statute, our primary aim is to effectuate the
 legislature's intent. Bill Barrett Corp. v.
 Lembke, 2020 CO 73, ¶ 14, 474 P.3d 46, 49. "To
 determine the legislature's intent, we look first to the
 plain language of the statute." Bostelman v.
 People, 162 P.3d 686, 690 (Colo. 2007). In evaluating
 the statute's language, "we look to the entire
 statutory scheme in order to give consistent, harmonious, and
 sensible effect to all of its parts, and we apply words and
 phrases in accordance with their plain and ordinary
 meanings." Lembke, ¶ 14, 474 P.3d at 49
 (quoting Blooming Terrace No. 1, LLC v. KH Blake
 St., LLC, 2019 CO 58, ¶ 11, 444 P.3d 749, 752).
 Where the plain language is unambiguous, we apply the statute
 as written. Delta Air Lines, Inc. v. Scholle, 2021
 CO 20, ¶ 13, 484 P.3d 695, 699.
 
 
          ¶13
 However, where a statute is reasonably susceptible to more
 than one interpretation, we may turn to other interpretive
 aids to discern the legislature's intent. Lewis v.
 Taylor, 2016 CO 48, ¶ 20, 375 P.3d 1205, 1209.
 Among these interpretive aids are the relevant legislative
 history and any reasonable interpretation of the statute by
 an enforcing agency. See § 2-4-203, C.R.S.
 (2022); Gallion v. Colo. Dep't of Revenue, 171
 P.3d 217, 221-22 (Colo. 2007).
 
 
          B.
 The Colorado Court Retained Jurisdiction Over the
 Proceeding
 
 
          ¶14
 The General Assembly adopted the UCCJEA with the
 "primary aim of . . . prevent[ing] competing and
 conflicting custody orders by courts in different
 
 10
 
 jurisdictions." In re M.M.V., 2020 COA 94,
 ¶ 17, 469 P.3d 556, 560. The official comments to the
 UCCJEA explain that the purpose of the statute is to
 "[a]void jurisdictional competition and conflict with
 courts of other States in matters of child custody which have
 in the past resulted in the shifting of children from State
 to State with harmful effects on their well-being."
 § 14-13-101 cmt. 1, C.R.S. (2022). To this end, the
 UCCJEA establishes a detailed and comprehensive framework
 that a court must use when determining whether it can
 exercise jurisdiction in a child-custody proceeding or
 whether it must defer to another state's jurisdiction.
 S.A.G., ¶ 23, 487 P.3d at 681-82.
 
 
          ¶15
 The UCCJEA "prioritizes home state jurisdiction in
 initial custody determinations." Brandt, ¶
 23, 268 P.3d at 411. For purposes of the UCCJEA, a
 child's "home state" is "the state in
 which a child lived with a parent or a person acting as a
 parent for at least one hundred eighty-two consecutive days
 immediately before the commencement of a child-custody
 proceeding." § 14-13-102(7)(a), C.R.S. (2022).
 
 
          ¶16
 Generally, once a court has made an initial child-custody
 determination consistent with section 14-13-201, it retains
 "exclusive, continuing jurisdiction over the
 determination." § 14-13-202(1). However, a court
 may lose its exclusive, continuing jurisdiction if:
 
 11
 
 (a) A court of this state determines that the child, the
 child's parents, and any person acting as a parent do not
 have a significant connection with this state and that
 substantial evidence is no longer available in this state
 concerning the child's care, protection, training, and
 personal relationships; or
 
 
 (b) A court of this state or a court of another state
 determines that the child, the child's parents, and any
 person acting as a parent do not presently reside in this
 state.
 
 
 § 14-13-202(1)(a)-(b).
 
 
          ¶17
 Here, the parties do not dispute that the Colorado court had
 home-state jurisdiction when it initially adjudicated E.W.
 dependent and neglected.
 
 
          ¶18
 What the parties do dispute is whether the juvenile court
 lost its exclusive, continuing jurisdiction over the
 proceeding after the Child was placed in Montana pursuant to
 the ICPC and the parents moved to Montana with no intention
 of returning to Colorado. The parents argue that the plain
 language of section 14-13-202(1)(b), providing that the court
 loses its exclusive, continuing jurisdiction if a court
 determines that the child and the child's parents no
 longer live in the state, means that as soon as the family
 members left Colorado, the court lost jurisdiction. The
 parents argue that the court was required at that point to
 "determine" that they and the Child had left the
 state and that the court no longer had jurisdiction over the
 proceeding.
 
 
          ¶19
 While this argument has some surface appeal when considering
 the language of section 14-13-202 in isolation, it is
 inconsistent with the purpose of the
 
 12
 
 UCCJEA, our prior case law, and the other statutory
 schemes-the ICPC and the Children's Code-relevant to this
 dispute.
 
 
          ¶20
 First, the UCCJEA was enacted to avoid jurisdictional
 disputes among states as to the authority to determine
 custody of a child. There is no other jurisdiction asserting
 a right to make a custody determination as to E.W. The notion
 that the Colorado court, having initially obtained
 jurisdiction under the UCCJEA, would simply lose that
 jurisdiction when no other state claimed jurisdiction, is
 untenable. It would leave the child, now adjudicated
 dependent and neglected, subject to no court's
 jurisdiction. Additionally, comment 2 of section 14-13-202
 recognizes that this is not the import of this provision by
 explaining: "Jurisdiction attaches at the commencement
 of a proceeding. If State A had jurisdiction under this
 section at the time a modification proceeding was commenced
 there, it would not be lost by all parties moving out of the
 State prior to the conclusion of proceeding."
 
 
          ¶21
 Second, as we explained quite recently in S.A.G.,
 "[I]n Colorado, a motion to terminate parental rights
 after a child has been adjudicated dependent and neglected is
 a request for a remedy, not the start of a second
 proceeding." ¶ 39 n.3, 487 P.3d at 685 n.3. The
 court was not, therefore, obligated to reassess whether it
 would have "initial" jurisdiction in order to
 conduct the termination hearing at the time of that hearing.
 It had properly acquired initial jurisdiction when the
 proceeding commenced, and it retained exclusive, continuing
 jurisdiction because
 
 13
 
 no alternate state asserted a competing, valid claim. The
 parents argue that, if a Montana court were to assert
 jurisdiction over E.W. today, Montana would be the
 child's home state for purposes of that proceeding. We
 decline to answer this question because it is beside the
 point. No proceeding has been commenced in a Montana court,
 and there is no suggestion that Montana is seeking to assert
 jurisdiction.
 
 
          ¶22
 Third, our conclusion that the court retained exclusive,
 continuing jurisdiction is bolstered by consideration of how
 the UCCJEA operates with the ICPC and the Children's
 Code. Once the Colorado court had appropriately obtained
 jurisdiction under the UCCJEA, it had authority to adjudicate
 E.W.'s status pursuant to the Children's Code, which
 provides that "the jurisdiction of the court over any
 child or youth adjudicated as neglected or dependent shall
 continue until the child or youth becomes eighteen and
 one-half years of age unless earlier terminated by court
 order." § 19-3-205(1), C.R.S. (2022). This grant of
 continuing jurisdiction, absent a court order, is
 inconsistent with the parents' argument that their mere
 departure from Colorado divested the court of jurisdiction.
 
 
          ¶23
 The ICPC's "retention of jurisdiction
 provision" also supports this conclusion. That provision
 explains that when a child is placed in another state
 pursuant to the ICPC,
 
 14
 
 [t]he sending agency shall retain jurisdiction over the child
 sufficient to determine all matters in relation to the
 custody, supervision, care, treatment and disposition of the
 child which it would have had if the child had remained in
 the sending agency's state, until the child is adopted,
 reaches majority, becomes self-supporting or is discharged
 with the concurrence of the appropriate authority in the
 receiving state.
 
 
 § 24-60-1802, art. V(a), C.R.S. (2022). Article II of
 that statute defines "sending agency" as "a
 party state, officer or employee thereof; a subdivision of a
 party state, or officer or employee thereof; a court of a
 party state . . . or other entity which sends, brings,
 or causes to be sent or brought any child to another party
 state." Id. at art. II(b) (emphasis added).
 While there is no indication that the ICPC could form the
 basis for initial jurisdiction over the Child, the retention
 of jurisdiction provision is inconsistent with the
 parents' assertion that the Colorado court simply lost
 jurisdiction by virtue of their move.[2] Interpreting the ICPC
 together with the Children's Code and the UCCJEA, we
 conclude that the court retained jurisdiction over the
 proceeding and was authorized to enter the order terminating
 parental rights.
 
 15
 
          III.
 Conclusion
 
 
          ¶24
 A court that has obtained initial jurisdiction to adjudicate
 a child-custody proceeding under the UCCJEA does not
 automatically lose jurisdiction under section 14-13-202(b) by
 virtue of all parties leaving the state. In the circumstances
 presented here, the Colorado court appropriately exercised
 its exclusive, continuing jurisdiction when it terminated
 parental rights in this proceeding.
 
 
          ¶25
 Accordingly, we affirm the division's decision that the
 juvenile court had jurisdiction to enter the termination
 order.
 
 16
 
 ---------
 
 
 Notes:
 
 
 [1] We granted certiorari on the following
 questions:
 
 
 1. [REFRAMED] Whether the district court lacked
 jurisdiction to enter the termination order under Uniform
 Child Custody Jurisdiction and Enforcement Act
 ("UCCJEA").
 
 
 2. [ADDITIONAL ISSUE] Whether the Retention of
 Jurisdiction provision of the Interstate Compact on the
 Placement of Children ("ICPC"), section 24-60-1802,
 art. V(a), furnishes a jurisdictional basis for the district
 court's termination order.
 
 
 [2] Because we conclude that the court
 retained exclusive, continuing jurisdiction over the
 proceeding under the UCCJEA, we decline to consider whether
 the ICPC would form an independent basis for jurisdiction. We
 emphasize that these statutes must be read together when they
 are operating together in a dependency and neglect case with
 an interstate placement.
 
 
 ---------